**John P. EMSHWILLER, Jr., Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 77–1035.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Nov. 17, 1977.

Rehearing and Rehearing En Banc Denied Dec. 13, 1977.

William H. Coates, Abrahams, Kaslow & Cassman, Omaha, Neb., on brief for appellant.

Aaron P. Rosenfeld, Atty., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Richard W. Perkins, Dept. of Justice, Washington, D.C., and Daniel E. Wherry, Omaha, Neb., on brief.

Before LAY, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

In this case Emshwiller (hereinafter taxpayer) sued for a tax refund and a jury returned a verdict in his favor. The trial court then granted the government's motion for judgment notwithstanding the verdict, both as to taxpayer's claim and on the government's counterclaim for the unpaid balance of the penalty assessed against the taxpayer under 26 U.S.C. § 6672. We affirm the judgment of the district court regarding liability but find that the record compels a further reduction in the total amount of tax owed.

Engineering Products Corporation, under the direction of its sole shareholder Milton Katelman, was in serious financial trouble. The taxpayer, John P. Emshwiller, Jr., was hired in December of 1970 to help straighten out the company's financial affairs. However, conditions worsened and on September 24, 1971, the company filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, et seq. On the same date the bankruptcy court entered an order authorizing the debtor to remain in possession of its property and to continue operating its business. This order specifically required the debtor

> to segregate and hold apart from all other funds all money withheld from employees or collected from others for taxes under any law of the United States * * and deposit in a separate bank account the money so withheld or collected.

Milton Katelman continued to manage the corporation's business until his death on March 27, 1972. The company's board of directors did not elect a general manager to succeed Katelman; however, three individuals including Emshwiller had authority, acting jointly with one of the other two individuals, to draw on the funds of the corporation. In June of 1972 the bankruptcy court appointed Emshwiller and George Sevick to act as co-managers of the corporation. Emshwiller continued to act in this capacity until December 26, 1973, when a receiver was appointed.[1]

---

1. On January 30, 1974, the corporation was adjudicated a bankrupt and a trustee was appointed.

On December 8, 1972, an amended plan of arrangement was confirmed by the bankruptcy court, which plan made the following provisions for payment of debts owed by the corporation to the United States:

The corporation's debts were divided into six classes—*Class 4* debts consisted of income, employment, withholding and social security (FICA) taxes accruing since the filing of the Chapter XI petition on September 24, 1971; *Class 3* debts consisted of similar taxes accruing prior to the filing of the petition.

An order of priority for satisfaction of these debts was established—

*Class 4* debts were to be paid in full upon confirmation of the plan of arrangement;

*Class 3* debts were to be satisfied thereafter in accordance with a schedule of twelve monthly payments;

*Future* withholding and FICA taxes were to be paid as they became due.

From the death of Mr. Katelman until it was placed into receivership, the corporation continued in the normal operation of its business, including making payments of net wages to employees. However, even though specifically advised by the Internal Revenue Service to do so, no funds were segregated and placed in a separate bank account to provide for employee withholding and FICA taxes during this period. As a result the corporation was unable to meet all of its current obligations to pay over these taxes to the government as they became due and was also unable to pay all of its Class 4 debts upon confirmation of the plan of arrangement.

On November 18, 1974, the Internal Revenue Service (IRS) assessed a penalty against the taxpayer Emshwiller personally under 26 U.S.C. § 6672 in the amount of $12,807.52 for unpaid employee withholding and FICA taxes due for the second and third quarters of 1972 and the third and fourth quarters of 1973. Emshwiller made a token payment of $100, then commenced the instant suit for a refund. The government counterclaimed for the unpaid balance of its assessment.[2]

Following trial the case was submitted to the jury in the form of two questions: (1) whether Emshwiller was a person responsible for the actions of the corporation during the quarters in question, and (2) whether Emshwiller had willfully failed to pay over the claimed taxes when due. The jury answered the first question in the affirmative and the second in the negative; the district court then entered an order overruling the government's motions for directed verdict and accepting the verdict rendered by the jury. Thereafter, the government moved for judgment n. o. v. and the same was granted. The taxpayer then filed this appeal.

## I. Liability.

Employers are required to withhold FICA and federal income taxes from employee wages and pay the amounts so withheld to the government on a quarterly basis in conjunction with IRS form 941.[3] Under the provisions of 26 U.S.C. § 7501, wages withheld from employees are deemed to be held in trust for the benefit of the United States and the employees in question are given credit for the amount of the withholdings regardless of whether the employer ever in fact pays the money to the government as required. Consequently, any failure by the employer to pay withheld taxes results in a loss to the government in that amount. *See United States v. Paulton*, 540 F.2d 886, 888 (8th Cir. 1976); *Hartman v. United States*, 538 F.2d 1336, 1339–40 (8th Cir. 1976); *Kelly v. Lethert*, 362 F.2d 629, 633 (8th Cir. 1966). To lessen the likelihood of such losses Congress enacted 26 U.S.C. § 6672, which provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to

2. The government subsequently collected an additional $439.94 from Emshwiller, thereby reducing the counterclaim to $12,267.58.

3. Under applicable treasury regulations payment over to the government is required at the end of the month following the close of each quarter.

collect such tax, or truthfully account for and pay over such tax \* \* \* shall \* \* \* be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over. \* \* \*

■ Though termed a "penalty," the liability imposed by section 6672 is civil in nature and is designed to provide the government a means by which to collect directly from the employer those taxes which the employer withheld and should have accounted for and paid over. *Hartman v. United States, supra,* 538 F.2d at 1340; *Kelly v. Lethert, supra,* 362 F.2d at 633. Under the terms of the statute, liability results from the coincidence of three factors: (1) There must be a "person" who (2) is required to collect, truthfully account for and pay over taxes, but who (3) "willfully" fails to do so.

■ The first two of these elements are embodied in the concept of a "responsible person." Where, as here, a corporate employer is involved, a responsible person is an officer or employee of the corporation who has "significant, albeit not necessarily exclusive, authority in the field of corporate decision-making and action where taxes due the federal government are concerned; but he need not be an actual disbursing officer." *Hartman v. United States, supra,* 538 F.2d at 1340. In this case the jury found Emshwiller to be a responsible person for the period commencing from the death of Milton Katelman on March 27, 1972, until the appointment of a receiver on December 26, 1973. Emshwiller does not dispute this finding; nor does the government seek to impose liability for any prior period. The issue in this case is whether Emshwiller willfully failed to pay over withheld taxes when due. The district court concluded that he had as a matter of law. We agree.

■ To be willful within the meaning of the statute, conduct need not be the product of an evil or spiteful motive. It is enough that a failure to pay taxes is the result of a deliberate or conscious choice. *Hartman v. United States, supra,* 538 F.2d at 1341. On the record before us it is clear that Emshwiller paid employees net wages knowing that funds were not then available to the corporation to make payment to the government of the wages withheld. It is likewise clear that no such contemporaneous payment was made for three of the quarters in question.[4] Emshwiller insists that he had no choice in failing to make these payments because the corporation's funds were made available to it only after the payment of other creditors under a trust arrangement between the corporation and the First National Bank of Council Bluffs, Iowa. However, the duty under the statute to make payment to the government arises at the instant wages are withheld. *Teel v. United States,* 529 F.2d 903, 906 (9th Cir. 1976). Therefore, the payment of net wages by a responsible person who had knowledge that no surplus funds then existed from which to make the required payment to the government constitutes a willful failure to collect and pay over under section 6672. *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir. 1975).

We are not insensitive to the dilemma faced by the manager of an insolvent corporation who is making an earnest effort to keep the business on its feet. Should he choose to refrain from paying net wages, he runs the risk of losing employees and with it the business; should he choose to pay net wages, he runs the risk of being unable to pay over those withheld. Despite the difficulty of this choice, there is no basis for allowing a responsible person to choose that course which disables him from meeting his tax obligation by preferring those with

---

4. On cross-examination Emshwiller identified copies of the corporation's IRS form 941 which had been filed for each of the quarters in question. With respect to three of the quarters, Emshwiller acknowledged that no payment had been remitted in conjunction with the filing of the form and that no deposits of withheld wages had been made previously during the quarter. With respect to the last remaining quarter, Emshwiller testified that no payment accompanied the filing and that only $970.80 had previously been deposited against a total liability of $3,779.85.

**1046**

wage claims. *Sorenson v. United States, supra,* 521 F.2d at 328.

■ A final assertion made by the taxpayer is that he simply did not fail to make payment to the IRS, willfully or otherwise. In support of this argument, the taxpayer relies on the fact that during his admitted period of responsibility the corporation incurred withholding tax liabilities of approximately $29,000 while during the same period the corporation made payments to the IRS in excess of $55,000. Of this latter figure the IRS applied over $35,000 to already delinquent accounts of the corporation arising prior to the commencement of Emshwiller's period of responsibility. The taxpayer thus asserts that all payments made to the IRS by the corporation during the taxpayer's period of responsibility should be credited to the taxpayer for purposes of reducing his section 6672 liability. We reject this argument.

Emshwiller does not contend that any payments made by the corporation during his period of responsibility were subject to any agreement or accompanied by any directions requiring the IRS to apply the payments to liabilities for any of the four quarters here in question, save one payment discussed in detail below. Absent such agreement or direction, the IRS was entitled to apply the payments to the corporation's oldest debts first. *Hewitt v. United States,* 377 F.2d 921, 925 (5th Cir. 1967); *Abrams v. United States,* 333 F.Supp. 1134, 1145 (S.D.W.Va.1971).

We conclude for the above reasons that under the view of the evidence most favorable to the taxpayer no reasonable conclusion can be drawn that Emshwiller did not willfully fail to pay over to the government withheld wages for the quarters here in question and therefore that judgment notwithstanding the verdict was properly entered by the district court on the issue of liability.

*II. Amount.*

Under the supervision of the bankruptcy court, Engineering Products Corporation sold certain real estate during the fall of 1972. The approximate sum of $16,500 realized from this sale was paid by the corporation into the registry of the bankruptcy court in October of 1972. In September of 1973 this fund was released to the corporation with directions from the bankruptcy court that $8,520.33 be paid into the referee's salary and expense fund and $7,602.68 be paid to the IRS. The corporation made payment to the IRS in this latter amount on November 8, 1973.

The district court concluded, and the IRS concedes, that this payment should have been allocated in accordance with the amended plan of arrangement approved by the bankruptcy court in December of 1972. That arrangement required the IRS to give first priority to the discharge of the corporation's "Class 4" debts, which consisted of those accruing since the filing of the Chapter XI petition in September of 1971. Instead, the IRS applied the sum of $5,000 to the corporation's "Class 3" pre-petition debts. This it was not entitled to do. The district court therefore correctly determined that the taxpayer was entitled to a credit in an amount equal to that he would have been given had the payment been applied solely to Class 4 debts.

The parties have agreed that the amount of the corporation's outstanding liabilities at the time payment was received is accurately reflected in the IRS statement of account, a copy of which was introduced at trial as Exhibit 18. In making his computations of outstanding Class 4 debts, the trial judge apparently relied upon a summary of account drawn by the IRS regional counsel and reproduced in a letter directed to Emshwiller's attorney. The IRS admits that this summary does not accurately reflect the corporation's liabilities as shown in Exhibit 18 and that therefore the district court understated the amount of the credit to which Emshwiller is entitled. The following table reflects the relevant Class 4 liabilities as perceived by the district court and as shown on Exhibit 18:

| Period | Exhibit 18 | District Court |
| --- | --- | --- |
| 4th Quarter, 1971 | $2,429.89 | $3,322.83 |
| 1st Quarter, 1972 | 485.41 | 457.25 |
| 2nd Quarter, 1972 | 6,534.61 | 6,918.37 |
| 3rd Quarter, 1972 | 3,834.04 | 3,933.45 |

The district court appropriately determined that the payment of $7,602.68 should have been applied to the corporation's oldest Class 4 debts first and that Emshwiller would not be entitled to a credit for that portion of the payment applied to the fourth quarter of 1971 and the first quarter of 1972, both quarters being prior to Emshwiller's period of responsibility. The district court then subtracted the sum of the liabilities for these two quarters, a total of $3,780.08, from the $5,000 which the IRS had applied to Class 3 debts, and arrived at a total credit of $1,219.92. Had the correct figures been used the credit would have been $2,084.70. In addition, the district court apparently assumed that the $2,602.68 which the IRS had applied to Class 4 debts had been correctly applied to the oldest debts first. In fact, only $2,117.27 had been applied to the second quarter of 1972. Therefore, Emshwiller is entitled to an additional credit of $485.41, or a total of $2,570.11.

Finally, the corporation's trustee in bankruptcy made a payment to the IRS on February 28, 1976, in the amount of $3,656.66. Of this amount, $1,603.64 was applied to the corporation's withholding tax liability for the second quarter of 1972.[5] While the liability imposed by section 6672 is the personal and distinct liability of the taxpayer, the government is not entitled to more than one satisfaction of the debt owed to it. *Hartman v. United States, supra,* 538 F.2d at 1340. Emshwiller is thus entitled to a credit on this transaction in the amount of $1,603.64. Therefore, Emshwiller is entitled to a total credit of $4,173.75 instead of the $1,219.92 allowed by the district court.

The judgment is affirmed with the exceptions noted and the case is remanded to the district court for entry of the appropriate judgment.

5. Since the plan of arrangement ended when the corporation was adjudicated a bankrupt, it was not necessary that the IRS apply the entire payment to Class 4 debts in accordance therewith.