**Calvin F. ELMORE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 86–2260.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1987.

Decided April 6, 1988.

Eugene G. Sayre, Little Rock, Ark., for appellant.

Patricia M. Bowman, Justice Dept., Washington, D.C., for appellee.

Before ARNOLD and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

This is an appeal from a final judgment entered by the district court upon a jury verdict finding appellant Calvin F. Elmore liable under 26 U.S.C. § 6672 for failure to collect and pay over federal employment taxes required to have been withheld from the wages of employees of Digital Systems, Inc. (Digital) during the fourth quarter of 1980 and the first three quarters of 1981. Elmore challenges only that portion of the judgment holding him liable for the fourth quarter of 1980. Because we conclude that the district court erred in omitting a jury instruction, we vacate the judgment and remand for a new trial as to the quarter in question.

Elmore and his business partner, Ralph S. LaCotts, were each fifty per cent shareholders in Digital, a corporation located in Little Rock, Arkansas, primarily engaged in the production and sale of computer software. LaCotts, a practicing certified public accountant officed in DeWitt, Arkansas, served as president and treasurer of Digital and, until his death on December 20, 1980, assumed primary responsibility for the management of its daily business affairs. LaCotts arranged all corporate financing and directed the bookkeeping and accounting, including the payment of creditors and the remittance of employment taxes. Elmore served as vice president and secretary and, prior to LaCotts's death, did not generally participate in day-to-day operations. Although Elmore was authorized to sign corporate checks, his principal responsibilities concerned the sales of Digital's computers and software.

Ordinarily, Vickie Wiley, a bookkeeper hired by the corporation, prepared Digital's payroll and accounts payable checks as directed by LaCotts and mailed them to him to sign and file. Likewise, Wiley prepared the quarterly Form 941 federal employment tax returns and sent them to LaCotts for his signature.

The Form 941 return prepared for the second quarter of 1980 was returned to the corporation in Little Rock by the Internal Revenue Service (IRS) because it had been mailed unsigned. At LaCotts's direction, Elmore, who was based in Little Rock, signed the return as a corporate officer and mailed it back to the IRS. At that time, Elmore observed that the form indicated that the tax liability for the employees' withholding and FICA (social security) taxes had been deposited, leaving a $0.00 balance due. Elmore testified that he believed the Form 941 for the third quarter of 1980, which LaCotts also directed him to sign, had been prepared in an identical manner.

Sometime in December, 1980 LaCotts disclosed to Elmore that some of Digital's employment tax liability had not been satisfied, but that he was anticipating a loan which would permit the corporation to be refinanced and the taxes paid. Elmore testified that this was the first that he learned of the tax arrearage. Elmore also learned that the Form 941 returns which he had signed for the second and third quarters of 1980 were erroneous; the requisite funds to cover the employment tax liability had not in fact been deposited nor had any funds been sent to the IRS.

After LaCotts's death, Elmore assumed sole responsibility for corporate affairs.

Apparently, throughout 1980 Digital exercised a practice permitting its salesmen, who were paid on commission, to make "draws" on the corporation when they needed money. The draws were treated as loans which were reduced accordingly when commissions were earned. The commissions were not reported as earned income, however, until a sale was completely closed. Upon assuming control, Elmore instructed Wiley to bring the commissions to date. Elmore had Wiley treat all of the sales as closed, which resulted in a showing of income earned by the salesmen during the fourth quarter of 1980 which had in reality been dissipated in previous quarters. This created an employment tax liability for these "earnings" alone in excess of $23,000.00. In addition, Elmore testified that Digital had no unencumbered funds at the time that he assumed control, and that he was unable to obtain the financing that LaCotts had hoped to acquire.[1]

In August, 1981 Elmore caused Digital to file a petition for reorganization under Chapter 11 of the Bankruptcy Code. Digital ceased operating shortly thereafter and the bankruptcy proceeding was dismissed. Although Elmore paid wages [2] and costs and filed the quarterly Form 941 returns during the period that Digital was able to continue operations, no withholding taxes were remitted to the government.

In the fall of 1981, the IRS, pursuant to 26 U.S.C. § 6672, assessed a one hundred per cent penalty in the amount of $54,-547.80 against Elmore individually for Digital's unpaid withholding taxes accrued in the second, third and fourth quarters of 1980, and the first, second and third quarters of 1981.[3] In March, 1982 Elmore paid $154.40 toward this assessment and then filed with the IRS Form 843 claims for refund of the amount paid and abatement of the balance. In June, 1982 he was notified that these claims had been disallowed.

During this same time, the Arkansas Department of Finance and Administration proposed to assess a similar one hundred per cent penalty against Elmore for Digital's failure to remit Arkansas state withholding taxes from November, 1980 through July, 1981, as provided in Ark.Stat. Ann. § 84–4707, (recodified at Ark.Code Ann. § 26–51–916 (1987)). Elmore protested imposition of this penalty, and after an administrative hearing the State determined that Elmore was not responsible for the collection, accounting, or paying over of state withholding taxes at any time prior to January, 1981.

After receiving notice of the State's determination, Elmore requested the IRS to again consider his claims for refund and abatement. Before this request was considered,[4] Elmore instituted this suit for a refund against the United States; the IRS counterclaimed for the unpaid balance of its assessment. The case was tried to a jury.[5] Two special interrogatories for each taxable quarter were submitted. The inter-

| Taxable Period | § 6672 Penalty Assessed |
|---|---|
| **1980** | |
| Second Quarter | $ 5,993.14 |
| Third Quarter | 7,131.15 |
| Fourth Quarter | 28,592.96 |
| **1981** | |
| First Quarter | $ 6,741.40 |
| Second Quarter | 4,672.35 |
| Third Quarter | 1,416.80 |
| Total | $54,547.80 |

---

**1.** During the period that LaCotts managed the daily affairs of the corporation, it encountered cash flow difficulties because Quantel Corporation, Digital's primary supplier, required a deposit before Quantel would ship Digital equipment. Eventually, after Elmore assumed control, Quantel began demanding advance payment for all equipment ordered and payment of a percentage of Digital's outstanding debt before any shipments would be made. In order to satisfy these requirements, Digital ordinarily obtained deposits from its customers, whose checks were sent directly to Quantel.

**2.** The record reflects that immediately after LaCotts's death, Elmore closed Digital for a two-week vacation; he did not pay any wages during this period.

**3.** The IRS determined the following arrearages for each quarter respectively:

**4.** The IRS informed Elmore that it was unable to entertain his request for reconsideration at any date prior to the expiration of the statute of limitations governing this suit.

**5.** Both parties filed motions for a directed verdict, upon which the district court initially reserved ruling, but later overruled.

rogatories directed the jury to indicate for each quarter whether Elmore was responsible for the collection, accounting, or payment of taxes, and if so, whether his nonpayment was willful, both of which are essential elements to the imposition of liability under § 6672. The jury found Elmore neither responsible nor willful for the second and third quarters of 1980, but found him both responsible and his failure to collect, account, or pay over willful for the remaining quarters. The district court entered judgment upon the verdict in favor of the government in the amount of $41,268.77, plus interest.

Thereafter, Elmore moved for partial judgment notwithstanding the verdict solely as to the fourth quarter of 1980. In his motion, Elmore argued that he was not liable for this period because he did not become "responsible" for the payment of withholding taxes within the meaning of § 6672 until December 20, 1980, the date of LaCotts's death. Elmore insisted that at that time Digital had no unencumbered funds and that the district court erroneously instructed the jury that a person who is responsible at the time an employment tax return is due is responsible for any unpaid trust fund taxes for the entire quarter (Instruction No. 11).[6] Elmore reasserted the ground upon which he objected to the instruction at trial, its failure to inform the jury that in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Supreme Court held that a corporate official who becomes responsible after withholding tax liability has accrued is not responsible for payment of that liability if no unencumbered funds exist when he assumes control. *Id.* at 259–60, 98 S.Ct. at 1791–92.

The government resisted Elmore's motion, arguing that Elmore was responsible during the entire fourth quarter and that once he became aware of the unpaid taxes, he was required to satisfy that liability with all unencumbered funds. Moreover, the government stressed that it had introduced evidence indicating that there were funds in the corporate bank account at the time of LaCotts's death, and that Elmore did not establish that these funds were encumbered. Prior to a court ruling on the motion, Elmore also filed an untimely request that it be treated alternatively as a motion for a new trial.[7] The district court denied both motions after concluding that the jury's verdict was supported by substantial evidence. This appeal followed.

On appeal, Elmore argues (1) that Instruction No. 11 was erroneous because it failed to inform the jury of the circumstances recognized in *Slodov;* and (2) that the district court erred in denying his motion for partial judgment notwithstanding the verdict because of the asserted error in Instruction No. 11, and because of the court's refusal to admit certain proffered evidence, which effectively precluded the jury from finding in Elmore's favor as to the quarter in question.

We begin our analysis by briefly reciting the principles governing the imposition of liability under § 6672. The Internal Revenue Code requires employers to withhold income and FICA taxes from their employees' wages. 26 U.S.C. §§ 3102 & 3402; *Emshwiller v. United States*, 565 F.2d 1042, 1044 (8th Cir.1977). The withheld funds are to be deposited in a special trust by the employer for the benefit of the United States, to be periodically accounted for and paid over. 26 U.S.C. § 7501; *Hart-*

---

**6.** A quarterly employment tax return is due by the end of the month following the quarter for which the return is made. 26 C.F.R. § 31.6071(a)–1(a)(1). It is not disputed that Elmore was a responsible officer at Digital when the return for the fourth quarter of 1980 was due, January 31, 1981.

**7.** We note parenthetically that the district court was without jurisdiction to entertain this untimely motion. *See Central Microfilm Service Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1211

(8th Cir.1982) ("[W]hen no party has timely moved for a new trial, the ten-day limit is strictly enforced."), *cert denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983); *see also*, 6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 59.09[3] (2d ed. 1987). We have recognized, however, that a motion for a new trial is not a prerequisite to a ground raised in a timely direct appeal. *See Sherrill v. Royal Industries, Inc.*, 526 F.2d 507, 509 n. 2 (8th Cir.1975).

*man v. United States,* 538 F.2d 1336, 1339–40 (8th Cir.1976).[8]

Under the provisions of 26 U.S.C. § 7501, once net wages are paid to an employee, the taxes that were, or should have been, withheld are credited to the employee as paid regardless of whether the employer in fact remits these funds to the government. *Emshwiller,* 565 F.2d at 1044. Consequently, the government has no recourse against the employee for an employer's failure to pay withholding taxes. *Id.* If a corporate employer fails to remit withholding taxes, however, § 6672 permits the government to recover these lost revenues from the corporate personnel responsible for either collecting, truthfully accounting for, or paying over the tax. *Slodov,* 436 U.S. at 250, 98 S.Ct. at 1786–87; *Hartman,* 538 F.2d at 1340. Pursuant to § 6672, such individuals are personally liable for a penalty equal to the amount of the delinquent tax. In relevant part, § 6672 provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

■ Hence, in order for an officer or employee to be held liable under this section, two requirements must be satisfied: (1) the party assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to in the parlance as a "responsible person,"[9] and (2) such a person must have *willfully* failed to ensure that the withholding taxes were paid. *Kizzier v. United States,* 598 F.2d 1128, 1132 (8th Cir.1979); *Hartman,* 538 F.2d at 1340. We have recognized that a corporate officer may be deemed responsible if he has significant but not necessarily exclusive authority concerning corporate decisionmaking and actions where the payment of federal taxes is involved. *Hartman,* 538 F.2d at 1340. The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States. *Id.* at 1341; *Emshwiller,* 565 F.2d at 1045.

Highly instructive here is the Supreme Court's interpretation of § 6672 in *Slodov,* 436 U.S. 238, 98 S.Ct. at 1778. There, the Court considered the liability of an individual who becomes responsible after the corporation's withholding taxes have accrued, any funds held in trust have been dissipated, and the corporation has no liquid assets. The government argued that Slodov was liable under § 6672 because he used funds acquired from carrying on the business after his assumption of control to pay other creditors. These funds, the government urged, were impressed with a trust in its favor for satisfaction of the corporation's overdue employment taxes, and Slodov's willful use of the funds to pay other creditors violated his obligation to "pay over" to the United States. *Slodov,* 436 U.S. at 251, 98 S.Ct. at 1787.

The Court rejected this argument, and held that a person who may otherwise be considered responsible does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of overdue employment taxes if, "at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute." *Id.* at 259–60, 98 S.Ct.

---

8. There is no requirement that these funds be segregated from the employer's general funds or that they be deposited in a separate account. *See Slodov v. United States,* 436 U.S. at 243, 98 S.Ct. at 1783.

9. The Court in *Slodov* clarified that the penalty is not limited to those persons responsible for the performance of all three of these duties, but rather extends to those who have a duty to fulfill any one of the listed functions. 436 U.S. at 250, 98 S.Ct. at 1786–87.

at 1791–92; *see Kizzier*, 598 F.2d at 1132–33.

Relying upon *Slodov*, Elmore argues that the district court erred in submitting the following instruction (Instruction No. 11):

> With respect to any unpaid employment taxes, a person is responsible so long as he was responsible for either withholding them, truthfully accounting for them or paying them over. As I previously instructed you, trust fund taxes that have not been paid must be paid when the quarterly tax return is filed. A person who is responsible at the time the employment tax return was due is responsible for any unpaid trust fund taxes for the entire quarter.

As indicated, Elmore objected to this instruction because it failed to inform the jury of the circumstances recognized in *Slodov*.

■ Before addressing the merits of this contention, we must confront a procedural problem concerning the preservation of error. Although Elmore objected to Instruction No. 11 and mentioned *Slodov*, he did not tender to the trial court specific language of a requested instruction based upon *Slodov*. Nevertheless, we believe Elmore's objection alerted the district court to the potential error in a timely manner, thereby sufficiently complying with the dictates of Fed.R.Civ.P. 51. *See Lear v. Equitable Life Assurance Society of the United States*, 798 F.2d 1128, 1133 (8th Cir.1986) ("[W]hile a party may request an instruction, ordinarily what is necessary in order to preserve the matter for appeal is to object to the instruction or in some way alert the district court to a potential error before submission to the jury."), *cert. denied*, —— U.S. ——, 107 S.Ct. 953, 93 L.Ed. 2d 1001 (1987); *cf. Smith v. Honeywell, Inc.*, 735 F.2d 1067, 1069 (8th Cir.1983) (error inadequately preserved where counsel did not request instruction nor alert trial court to the alleged omission in a timely manner), *cert. denied*, 469 U.S.

1077, 105 S.Ct. 576, 83 L.Ed.2d 516 (1984). We will overlook an omission to alert the trial court to the problem only if the failure to give an instruction constitutes plain error. *Gander v. Mr. Steak of Sun Ray, Inc.*, 774 F.2d 920, 923 (8th Cir.1985). The plain error exception to compliance with Rule 51 is " 'confined to the exceptional case where error has seriously affected the fairness, integrity or public reputation of judicial proceedings.' " *Smith v. Honeywell, Inc.*, 735 F.2d 1067, 1069 (8th Cir.) (quoting *Rowe International, Inc. v. J–B Enterprises, Inc.*, 647 F.2d 830, 835 (8th Cir.1981)), *cert. denied*, 469 U.S. 1077, 105 S.Ct. 576, 83 L.Ed.2d 516 (1984). It is doubtful at best that plain error has been demonstrated here, and indeed there is no need for further reference to plain error since, as indicated, we consider Elmore's objection sufficient to preserve for review the alleged *Slodov* error.

■ Returning to the merits of Elmore's argument, we note at the outset that Instruction No. 11 properly states the law so far as it goes; as indicated above, an officer responsible for collecting, accounting for, or paying over withholding taxes is a responsible person within the meaning of § 6672. In similarity to *Slodov*, however, the jury here undoubtedly found that a change in corporate control had occurred. It is extremely likely, particularly in light of the jury's finding that Elmore was not responsible during the prior two quarters, that the jury did not consider him responsible until after LaCotts's death.

Furthermore, the record contains evidence indicating that Digital had no unencumbered funds at this time. The record reflects that although Digital may have had a positive balance in its bank account, these funds were encumbered because the corporation had previously written a number of checks which remained outstanding. Moreover, aside from the bookkeeping entry resulting in a showing of earned commissions,[10] the entire tax liability for the

---

10. The applicable revenue rulings provide that advances made to salesmen against unearned salary or commission, which the salesmen are

not legally obligated to repay, are treated as wages at the time of payment for federal employment tax purposes. *See* Rev.Rul. 68–239,

fourth quarter accrued prior to LaCotts's death. Finally, although the government insists that Elmore should be held liable for the fourth quarter because he paid wages and costs after the taxes for this period accrued, the record contains no evidence that the funds used for these purposes were traceable to trust funds or were otherwise anything but acquired after Elmore's accession to control.

In these circumstances, we think that the district court erred in omitting an instruction informing the jury of Elmore's *Slodov* theory. *See Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d 817, 820 (8th Cir.1986) (instructions must inform the jury of the pertinent issues and the permissible ways of resolving them). We have reviewed the instructions as a whole, *Total Petroleum, Inc. v. Davis*, 788 F.2d 476, 484 (8th Cir.1986), and in the context of the trial, *United States v. McMillan*, 820 F.2d 251, 256 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987), and conclude that this error was not cured at any other place in the instructions. Accordingly, we reverse and remand for a new trial as to the fourth quarter of 1980.

We disagree, however, with Elmore's assertion that the district court erred in failing to grant his motion for partial judgment notwithstanding the verdict. An order entering judgment notwithstanding the verdict is proper only if the evidence points solely in favor of the movant and is susceptible of no reasonable inferences sustaining the position of the party opposing the motion. *Rule v. Lutheran Hospitals & Homes Society of America*, 835 F.2d 1250, 1252 (8th Cir.1987). We have previously acknowledged the applicability of this standard in cases involving the assessment of penalties under § 6672. *See, e.g., Hartman*, 538 F.2d at 1341. We do not believe that this standard has been satisfied here.

The record contains sufficient conflicting evidence to preclude conclusive establishment of the movant's case. *See Simpson v. Skelly Oil Co.*, 371 F.2d 563, 565–67 (8th Cir.1967).

Furthermore, we find Elmore's evidentiary arguments without merit. Elmore argues that the district court erred in refusing to permit him to introduce evidence concerning the fact that no § 6672 penalty had been assessed against LaCotts, and in refusing to permit him to inform the jury of the determination by the State of Arkansas that he was not responsible for the payment of state withholding taxes until after January 1, 1981. The fact that no liability had been assessed against LaCotts was irrelevant to Elmore's case; two or more persons may be jointly and severally liable under § 6672. *Hartman*, 538 F.2d at 1340. No question of contribution or indemnity between Elmore and LaCotts was presented at trial.

■ Similarly, we find no abuse of discretion in the district court's refusal to permit the introduction of evidence concerning the state determination; the outcome of that proceeding bore no relevance to the question of Elmore's liability under federal law. Although Elmore attempts to liken this case to *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), in support of his argument in this regard, *Estate of Bosch* is inapposite. That case concerned the admissibility of a state determination where federal tax liability turned upon state law. The situation in the present case is factually distinct.

In summary, we remand for a new trial with respect to liability for the fourth quarter of 1980 and, as indicated, for an instruction informing the jury of the circumstances recognized in *Slodov*. We have con-

1968–1 C.B. 414. If the salesmen are legally obligated to repay such advances, however, they are not treated as wages at the time of payment but are considered loans, and, like most earnings on commission, are treated as wages when the commission is actually earned. *See* Rev. Rul. 68–337, 1968–1 C.B. 417.

It is unclear into which of these categories the advances to Digital's salesmen lie. What is clear, however, is that, depending upon the categorization of the advances, the withholding tax liability for the fourth quarter of 1980 may well include only the advances actually paid or the commissions actually earned at that time.

sidered Elmore's additional contentions, and find them without merit.

Reversed and remanded.