**Charles L. HONEY, Plaintiff,**

v.

**UNITED STATES of America, Defendants.**

**UNITED STATES of America, Counterclaimant,**

v.

**Charles L. HONEY, James W. Meador and Felix P. Lee, Counterdefendants.**

**Civ. No. 89–4108.**

United States District Court, W.D. Arkansas, Texarkana Division.

Feb. 4, 1991.

Eugene Sayre, Jack, Lyon & Jones, P.A. and Philip Miron, Plastiras Law Firm, Little Rock, Ark., for plaintiff and counterdefendant Charles L. Honey.

Roger Bracken and Hollis Fleischer, Tax Div., Dept. of Justice, Washington, D.C., Michael Fitzhugh and Claude Hawkins,

U.S. Attorney's Office, Fort Smith, Ark., for defendant and counterclaimant U.S.

Barry Barber, McKenzie, McRae & Vasser, Prescott, Ark., for counterdefendant James W. Meador.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

*Background and Issues*

This case was tried before a jury in May, 1990. By agreement of the parties, the court is to decide how much penalty, if any, is due to the government. The parties have submitted post-trial briefs and reply briefs.

In interrogatories, the jury found that Charles Honey and James Meador, officers of Phoenix Housing Systems, were responsible for paying withholding taxes in the second, third, and fourth quarters of 1985, that their failure to pay those withholding taxes was willful only in the fourth quarter, and that their willful failure to pay[1] spanned the period between October 31 and December 31, 1985. The parties disagree on how to allocate certain advances made to the corporation's officers during the second and third quarters of 1985, on whether officers may be liable for periods before willfulness began if they were responsible for paying withholding taxes in those periods, and on the amount of unencumbered funds available on or after October 31, 1985.

The jury's finding that plaintiffs were responsible and willfully failed to pay over taxes as of October 31, 1985, clearly obligates plaintiffs to satisfy the 100% penalty due pursuant to 26 U.S.C. § 6672 for November and December of 1985. The court must determine the amount of this penalty. A more difficult question in this case is whether plaintiffs Charles Honey and James Meador must also satisfy the penalty assessed for those periods that the jury found plaintiffs were responsible but

not willful, that is the second, third, and beginning of the fourth quarter of 1985. The court believes that under the law taxpayers are obligated to use only unencumbered funds, including those acquired after learning of delinquent tax liabilities, to satisfy those liabilities. *See Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Elmore v. United States*, 843 F.2d 1128–1132 (8th Cir.1988). The jury's answers to the special interrogatories indicate that plaintiffs became aware of their accrued tax liability as of October 31, 1985, the date the president of the company, F. Peter Lee, mysteriously disappeared. Accordingly, for the second, third, and beginning of the fourth quarter of 1985 the plaintiffs are legally obligated to pay a tax penalty not to exceed the amount of all unencumbered funds available between October 31 and December 31 of 1985.

## I. Liability for Periods of Responsibility But before Willfulness

The Internal Revenue Code, 26 U.S.C. § 3401 *et seq.* directs employers to collect both income and FICA taxes from their employees. These sums are commonly referred to as "trust funds" because the Code provides that they are deemed to be a "special fund [held] in trust for the United States." 26 U.S.C. § 7501. In order for an officer or employee to be held liable under 26 U.S.C. § 6672, two requirements must be satisfied:

(1) the party assessed must be a person required to collect, truthfully account for and pay over the tax, referred to in the parlance as a "responsible person" and (2) such person must have willfully failed to ensure the withholding taxes were paid. *Kizzier v. United States*, 598 F.2d 1128, 1132 (8th Cir.1979); *Hartman [v. United States]*, 538 F.2d 1336, 1340 (8th Cir.1976).

---

**1.** The interrogatory actually asked on what date each person "became a responsible officer" in that quarter. All parties seem to interpret this as a finding that the period specified is the period of willfulness. Since the jury had already found that both persons were responsible for paying withholding taxes in all three quarters, presuming that the period specified is that of the willful failure to pay is the only construction of the jury's finding that makes sense.

*Elmore v. United States,* 843 F.2d 1128, 1132 (8th Cir.1988).

The jury found that plaintiffs were responsible persons during all relevant quarters but plaintiffs argue that the jury's finding that plaintiffs' failure to pay the taxes was not willful during the second and third quarters of 1985 relieves them of liability for withholding taxes accrued during those periods. Plaintiffs cite the Supreme Court's decision in *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) and the Eighth Circuit's holding in *Elmore v. United States,* 843 F.2d 1128 (1988) to support this proposition. In both these cases, however, the facts are distinguishable from the facts here because in both cases the taxpayers were not deemed "responsible" persons within the meaning of § 6672 for those quarters for which tax liability was excused.

*Slodov* involved an orthodontist who, having no prior connection with three food vending businesses, bought their stock. As soon as the orthodontist took control of the businesses he found that the businesses had accrued a $250,000 liability for past due withholding taxes. The Court held that funds collected after a change in corporate control are not impressed with a trust for taxes withheld during a prior regime unless those funds are directly traceable to dissipated trust funds; and that failure to use such later acquired funds to pay federal withholding taxes does not constitute a violation of the § 6672 requirement that the responsible person "pay over" withholding taxes. *See* 436 U.S. at 258, 98 S.Ct. at 1791. The court in *Slodov* specifically limited its holding to funds acquired after the responsible persons "accession to control." 436 U.S. at 258–59, 98 S.Ct. at 1791. In *Slodov,* then, the Court confronted the situation of a party becoming a responsible person, within the meaning of 26 U.S.C. § 6672, after the corporation had incurred a tax liability and had expended funds available to pay the liability. *Kizzier v. United States,* 598 F.2d 1128, 1134 (8th Cir.1979). In the present case, however, the jury found that plaintiffs were responsible persons throughout the entire period over which Phoenix Housing acquired its tax liability.

In *Elmore* the Eighth Circuit faced a situation where the jury found the defendant neither responsible nor willful for the second and third quarters of 1980, but found him both responsible and willful for the remaining quarters. The court held that "[i]n similarity to *Slodov,* however, the jury here undoubtably found a change in corporate control had occurred." *Elmore v. United States,* 843 F.2d 1128 (8th Cir. 1988). So long as there is no change in the control of the corporation, the Eighth Circuit's decision in *Kizzier v. United States* applies. There, the court found:

> Although [the plaintiff] did not become aware of [the corporation's] tax delinquency until March 1974, he was a responsible person ... through all the calendar quarters [the corporation] failed to pay over employment taxes to the Government. As such, [the plaintiff's] responsibility to pay [the corporation's] withheld employment taxes extended to unencumbered funds received by the corporation *after* [the plaintiff] learned of [the corporation's] tax delinquency.

*Kizzier,* 598 F.2d at 1138. In *Kizzier* the Eighth Circuit adopted the reasoning previously enunciated by *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979):

> Where there has been no change in control, however, responsible persons are subject to a duty to apply any available unencumbered funds to reduction of accrued withholding tax liability, whether or not those funds are deemed to be trust funds within the meaning of § 7501.

*Kizzier,* 598 F.2d at 1134 (quoting *Mazo,* other citations omitted).

■ Thus, plaintiffs are subject to a 100% penalty of unpaid taxes between January 1 to October 31, 1985, but this penalty may not be greater than the unencumbered funds available to Phoenix Housing on or after October 31, 1985, the date the jury found them to be both responsible and willful within the meaning of 26 U.S.C. § 6672. For in none of the cases cited in the government's extensive post trial briefs

has a taxpayer been personally obligated to pay a tax liability which accrued prior to the period of willfulness when there were no unencumbered corporate funds available to pay the accrued tax liability. *See e.g., Elmore*, 843 F.2d at 1132.

## II. *Unencumbered Funds Available Between October 31 and December 31, 1985*

Though plaintiffs are liable to pay the entire tax penalty which accrued during the second, third, and first month of the fourth quarter of 1985, to the extent that unencumbered funds were available during the period of willfulness, a most difficult question is still presented by this case, that is whether, and in what amount, unencumbered funds were available with which plaintiffs could have paid the corporation's liabilities after they became aware of them on October 31, 1985.

In determining the liability for accrued taxes owed to the government, the Supreme Court has emphasized as a critical consideration whether the failing corporation had "funds," *see, e.g., Slodov*, 436 U.S. at 242, 259, 260, 98 S.Ct. at 1782–83, 1791, "liquid assets," *id.* at 242, 246, 251, 98 S.Ct. at 1782–83, 1784–85, 1787 or "cash," *id.* at 251, 98 S.Ct. at 1787, on hand when the responsible person assumed control of the enterprise. In this case one cannot look to the cash on hand as of the second quarter of 1985 since the jury findings indicate that plaintiffs were not even aware of the liability until October 31, 1985, and so had no knowledge that the tax debt had to be paid. Thus the question here is whether there were unencumbered assets as of or after October 31, 1985. "As administered by the IRS, section 6672 brings to the government only the same amount to which it was entitled by way of the tax," and "is simply a means of insuring that the tax is paid." *Purdy Co. of Illinois v. United States*, 814 F.2d 1183, 1186 (7th Cir.1987) (citations omitted).

Although the amount owed is called a "penalty," section 6672 is not meant to punish the unwary by requiring them to pay over money acquired and dissipated before they were aware it was owed to the government. *See Slodov*, 436 U.S. at 254, 98 S.Ct. at 1788–89. The government argues in this case that the court should simply add up the dollars deposited to or withdrawn from the corporate account after October 31, 1985 in order to determine the level of unencumbered funds. In this way the defendants contend that there were over $114,000 in unencumbered funds with which plaintiffs could have paid their accrued withholding tax liability. Since the IRS assessed a penalty of $112,375.49, plaintiffs would, under the defendants' theory, be required to pay the entire penalty. The defendants' proposal, however, is unsuitable as it would enable the government to recover funds which were never actually available in the businesses' accounts during the months that plaintiffs willfully failed to pay the accrued withholding tax liability.

Because the government's test perhaps has about it a deceptive aura of rectitude and equity, and might therefore seem to be one that the court should adopt, the court will devote some discussion to demonstrating the unreliability of its proposed method.

By simply adding up withdrawals and deposits as the government proposes that the court do, there is a risk of multiple counting which is manifestly unacceptable. To understand this, consider the bank account of the following hypothetical business. Let this business have $1,000 in deposits on the day before it finds out that it has a tax liability of $20,000. If it manufactures its product on day 1 by buying $900 worth of supplies and paying $100 to its employees, the company is able to sell that product for $1,100 on day 2. The company spends $900.00 for more materials and $100 for more labor on day 3. Then the company can again sell the product on day 4 for $1,100. If this same transaction pattern occurred for one month, the bank's deposit and withdrawal records would probably look like this:

| Day | Deposits | Withdrawals | Balance |
|-----|----------|-------------|---------|
| 0.  | $ 1,000  | $     0     | $1,000  |
| 1.  | 0        | 1,000       | 0       |
| 2.  | 1,100    | 0           | 1,100   |
| 3.  | 0        | 1,000       | 100     |
| 4.  | 1,100    | 0           | 1,200   |
| 5.  | 0        | 1,000       | 200     |
| 6.  | 1,100    | 0           | 1,300   |
| 7.  | 0        | 1,000       | 300     |
| 8.  | 1,100    | 0           | 1,400   |
| 9.  | 0        | 1,000       | 400     |
| 10. | 1,100    | 0           | 1,500   |
| 11. | 0        | 1,000       | 500     |
| 12. | 1,100    | 0           | 1,600   |
| 13. | 0        | 1,000       | 600     |
| 14. | 1,100    | 0           | 1,700   |
| 15. | 0        | 1,000       | 700     |
| 16. | 1,100    | 0           | 1,800   |
| 17. | 0        | 1,000       | 800     |
| 18. | 1,100    | 0           | 1,900   |
| 19. | 0        | 1,000       | 900     |
| 20. | 1,100    | 0           | 2,000   |
| 21. | 0        | 1,000       | 1,000   |
| 22. | 1,100    | 0           | 2,100   |
| 23. | 0        | 1,000       | 1,100   |
| 24. | 1,100    | 0           | 2,200   |
| 25. | 0        | 1,000       | 1,200   |
| 26. | 1,100    | 0           | 2,300   |
| 27. | 0        | 1,000       | 1,300   |
| 28. | 1,100    | 0           | 2,400   |
| 29. | 0        | 1,000       | 1,400   |
| 30. | 1,100    | 0           | 2,500   |
| TOTAL DEPOSITS/WITHDRAWALS | $17,500 | $15,000 | |

The government's proposal that one can simply add up the deposits or the withdrawals that went to any creditor but the IRS, would, for this hypothetical company, result in the finding that there were at least $15,000 in unencumbered funds available for payment of the tax lien. But it is perfectly clear that the hypothetical company never had more than $2500 with which it could have paid its debts. If the government had used the ordinary procedures of notice and demand, moreover, they could have placed a lien on the property of Phoenix Housing System at a much earlier stage. But if they are permitted to sum up the deposits and the withdrawals in a bank account, the government will always profit enormously from not stopping, notifying, and placing a lien on a failing business at the earliest possible date. Such is not the intent of the Tax Code. *See generally* *Slodov*, 436 U.S. at 242, 98 S.Ct. at 1782–83 *et seq.*

The inadequacy of the government's method of accounting for available funds in this case is shown even more clearly by the unchallenged testimony of the defendant's own witness, Mr. Doyle Brewer, Vice President of the First National Bank of Hope, Arkansas, the bank in which these deposits and withdrawals were made. Mr. Brewer testified that for all days in October, November, and December of 1985, the checks issued by Phoenix Housing Systems, Inc., that were presented to the bank for payment, were "force paid." This term means that there were no funds available in Phoenix Housing Systems' bank account to pay the checks as they were presented. Instead, the checks were held, deposits were made to cover those checks, and the amounts of the checks were then cleared.

Thus, the balance of the withdrawals and deposits made on any given day had little or no bearing on the extent of unencumbered funds available to the company.

█ Because there are limits on the power of the IRS to defeat competing creditors in pursuit of company assets, *see Slodov*, 436 U.S. at 256–259, 98 S.Ct. at 1789–91 (outlining various limits on the power of the IRS under § 6672), this court cannot impose personal liability on the plaintiffs for their failure to use already encumbered funds to pay the company's tax liability, especially where as here those funds were encumbered before either Honey or Meador were aware of the debt. "[I]t would be inconsistent to impose personal liability for paying after acquired funds to a secured creditor over whom the IRS did not even claim priority." *Purdy Co. of Illinois v. United States*, 814 F.2d 1183, 1190 (7th Cir.1987) (citing *Slodov*, 436 U.S. at 259, 98 S.Ct. at 1791). As the *Slodov* Court noted, it is plain that

> ... Congress did not intend § 6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the IRS does not assert an interest.

*Slodov*, 436 U.S. at 259, 98 S.Ct. at 1791. Thus defendants are not entitled to recover personally from the plaintiffs for funds which they could not have wrested from Phoenix Housing Systems by any of the usual procedures, including that of taking a lien and forcing a sale after assessment, notice, and demand. *See Slodov*, 436 U.S. at 243–45, 98 S.Ct. at 1783–84 (describing the ways that the IRS can effect payment of withheld taxes).

Upon review of the evidence introduced at trial, and the parties' post trial briefs as to liability, the court finds that Phoenix Housing Systems had no unencumbered funds with which to satisfy the accrued withholding tax liability. Accordingly, plaintiff will be personally liable only for the unpaid tax liability which accrued between October 31, 1990, and December 31, 1990.

### III. Withholding Tax Liability For November and December of 1985

█ Because the record contains evidence indicating that the company had no unencumbered funds with which plaintiff could have paid the tax liability which accrued prior to October 31, 1985, plaintiff's personal liability under § 6672 is limited to the amount of payroll taxes that should have been withheld from wages paid to employees of Phoenix Housing Systems on payrolls made by the company after October 31, 1985.

█ The government argues that the plaintiff should also be liable for certain advances made to officers prior to October 31, 1985. But since these advances become payable and taxable as wages at the time they were made, that is prior to October 31, 1985, these wages will not be included in the gross wage calculation for November and December of 1985. The payroll records of Phoenix Housing Systems reflect that the payrolls actually made by Phoenix Housing Systems for periods on or after October 31, 1985, were made on November 1, 8, 15, 20 and 29, 1985; and December 6, 13, and 20, 1985. (The checks for the December 27, 1985 payroll and the January 3, 1986, payroll, were never actually issued by the company.) The payroll amount totals $111,507.33. (*See* GX 21, PX 1, p. 2). Having reviewed the evidence produced at trial, and post-trial briefs, the court finds that Honey and Meador have shown that Phoenix Housing Systems, Inc. failed to pay over $13,161.00 in withheld federal income and FICA taxes. Honey and Meador are jointly and severally liable for that amount.

Against this amount of $13,161.10 plaintiff Charles Honey has paid $150.00 and plaintiff James W. Meador has paid $1,000.00. Thus, the total tax liability remaining against Honey and Meador on the government's counterclaim is $12,011.10. Accordingly, judgment will be entered for the government in the amount of $12,011.10 plus interest as provided by law.