**In re Bruce G. ROSSITER, Debtor.**

**Bankruptcy No. SA 91–31295 JW.**

United States Bankruptcy Court,
C.D. California.

May 3, 1994.

**920**

Bruce G. Rossiter, in pro. per.

Terree A. Bowers, U.S. Atty., Mason C. Lewis, Asst. U.S. Atty., for claimant U.S.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

This case involves the claim of the Internal Revenue Service (hereinafter "IRS") against Bruce G. Rossiter (hereinafter "Debtor"), regarding the alleged liability of the Debtor under Internal Revenue Code § 6672(a), as a "responsible person" who willfully failed to ensure that withholding taxes were paid over to the IRS.

## I. STATEMENT OF FACTS

The claim of the IRS against Debtor arose from a federal payroll tax deposit in the amount for $343,000.00, which was made by San/Bar Corporation (hereinafter "San/Bar") on September 23, 1987. San/Bar was principally owned by Barry and Lloyd Hallamore (hereinafter "Hallamores"). On September 15, 1987, San/Bar was merged into Resdel Industries (hereinafter "Resdel") to form a new entity, Sanbar Corporation (hereinafter "Sanbar").

Just prior to the merger, the employment contracts of the Hallamores were bought out by San/Bar for a large cash payment. A federal payroll tax deposit was made by San/Bar to cover the withholding tax obligation arising in connection with the payments to the Hallamores. However San/Bar's federal payroll tax return for the third quarter of 1987 failed to report the buyout payments made to the Hallamores. Thus, the tax return understated the total compensation actually paid to the Hallamores, which caused the IRS to send Sanbar a refund check for $390,306.52 in March of 1989.

Within a few weeks of the IRS refund, several of the officers of Sanbar as well as the Debtor met and discussed the refund. At the time, Debtor was not an officer or employee of Sanbar, but rather a director of Resdel. No one at the meeting had been able to determine the nature of the refund. The following day, Sanbar's president transferred $200,000.00 of the refund monies to the Phoenix Group, the parent company of Resdel and a creditor of Sanbar, while the remainder of the funds was used by Sanbar as working capital. The decision to pay Phoenix Group was not discussed at the meeting, nor did Debtor participate in such decision.

In the latter part of 1989, an IRS agent examining the books of Sanbar discovered that the refund had arisen from the $343,000.00 deposit made in connection with the buyout of the Hallamores' employment contracts. In May of 1990, the IRS assessed $477,073.98 in payroll taxes, interest, and penalties against Sanbar. On December 22, 1989, an IRS agent sent a letter to the Debtor, in his capacity as an officer of Res-

del, requesting that the refund be returned to the IRS and advising that the Debtor could be held personally liable.

On December 11, 1989, the Debtor was named president and secretary of Sanbar. On January 29, 1990, Rossiter & Company, an entity controlled by the Debtor, acquired a controlling interest in Sanbar. Debtor testified that prior to January 29, 1990, he never participated in the decisions and/or operations of Sanbar.

Shortly after taking control of Sanbar, the Debtor entered into negotiations with the IRS concerning the payroll taxes. Debtor contends that at such time Sanbar had an average daily balance in its operating accounts of $5,329.64, and had no funds available to pay the IRS above the minimal working capital needs of Sanbar. During the relevant time periods on and after January 29, 1990, all of Sanbar's receipts were deposited to the operating bank account. In or about October of 1990, pursuant to an oral agreement, Sanbar commenced payments of $1,000.00 per month to the IRS, though a formal written agreement was not signed until August of 1991. On June 6, 1990, Sanbar was restructured in a transaction where the assets of Sanbar were sold to another subsidiary of Resdel, and renamed Sanbar Telecommunications, Inc. The Debtor continued to operate the business under the new name, Sanbar Telecommunications, Inc. The Debtor filed for bankruptcy on February 12, 1991. In May of 1992, Sanbar Telecommunications, Inc., filed for bankruptcy.

On March 4, 1991, the IRS assessed $343,-021.92 in penalties against the Debtor under I.R.C. § 6672. On or about June 17, 1992, the IRS filed a claim against the Debtor's bankruptcy estate. On November 24, 1992, the Debtor filed an objection to the claim of the IRS, and on December 11, 1992, an amendment to the objection.

## II. DISCUSSION

The IRS contends the Debtor is liable for the 100 percent penalty provision under Internal Revenue Code § 6672(a), as a "responsible person" from and after January 29, 1990, who willfully failed to ensure that withholding taxes of Sanbar were paid over to the IRS. I.R.C. § 6672(a) states in relevant part:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

For the purposes of this statute, the term "person" includes an officer or employee of a corporation, who as such officer or employee is under a duty to perform the act which respect to which the violation occurs. I.R.C. § 6671(b). The accepted test for liability under § 6672 is that the individual (a) must be a person who is responsible for the collection, accounting or paying over of the payroll withholding taxes, and (b) must have willfully failed to carry out this responsibility. *Elmore v. United States*, 843 F.2d 1128, 1132 (8th Cir.1988).

It is undisputed that the Debtor took control of Sanbar, a financially beleaguered company, long after the payroll tax obligation became due. The IRS concedes the Debtor was not a "responsible" officer of Sanbar when the tax obligation arose or at anytime prior to January 29, 1990. Thus, the question before the court is limited to whether the Debtor is liable to the IRS under I.R.C. § 6672 for his actions or inaction occurring on or after January 29, 1990. Stated otherwise, can the Debtor be held liable under § 6672 where the obligation for the trust fund taxes arose long before Debtor took control over the corporation?

The seminal case regarding this issue is *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Slodov purchased the stock of three corporations and assumed control at a time when the corporations had no liquid assets to satisfy a delinquency that existed for federal taxes. The taxes had been withheld from the wages of the corporations' employees, but had not been paid over to the IRS by the previous management of the corporations. That management had dissipated the specific funds which had been withheld prior to Slodov

assuming control of the corporations. After Slodov assumed control, the corporations acquired funds sufficient to pay the delinquency, but instead used the funds to meet the operating expenses of the corporations. Thereafter, Slodov withdrew from the corporations' business and instituted bankruptcy proceedings. The IRS sought to hold Slodov personally liable pursuant to § 6672, arguing that the penalty attached when Slodov paid other creditors over the IRS. The Sixth Circuit Court of Appeals held in favor of the IRS, concluding that Slodov was personally liable. The Supreme Court granted *certiorari*, and reversed.

The Supreme Court in *Slodov* held that a responsible person "does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumes control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes ..." *Id.* at 259–260, 98 S.Ct. at 1791.

The Supreme Court based its view that a responsible person does not act "willfully" when paying the corporation's creditors with after-acquired funds on the following grounds: (1) it is inconsistent with the statute to impose penalties on a taxpayer for doing what is in the best interest of the IRS—continuing to operate the business; otherwise, all well counseled responsible persons would cease doing business rather than expose themselves to penalties; (2) there is no equitable trust imposed upon after-acquired cash because there is no nexus between such current cash and the misappropriated withholdings; (3) the penalty statute was not intended to be used by the IRS to coerce taxpayers into paying the claims of the IRS ahead of other claimants to which the IRS was expressly made subordinate by Congress; (4) Congress intended to impose penalties only upon a showing of personal fault. See *Johnson v. C.I.R.*, 663 F.Supp. 294, 298 (D.Utah 1987).

■ In the case at bar, the IRS distinguishes *Slodov*, arguing that the corporation herein had sufficient funds to pay the tax obligation. *Slodov* emphasizes as a critical consideration whether the failing corporation had unencumbered "funds," see, e.g., *Slodov*,

436 U.S. at 242, 259, 260, 98 S.Ct. at 1782–83, 1791, 1792, "liquid assets," *id.* at 242, 246, 251, 98 S.Ct. at 1782–83, 1784–85, 1787, or "cash," *id.* at 251, 98 S.Ct. at 1787, on hand when the responsible person assumed control of the company. *See Purdy Co. of Illinois v. U.S.*, 814 F.2d 1183 (7th Cir.1987). However, the case law has made it clear that the IRS is not entitled to recover from a "responsible person" where the corporation's funds could not have been wrested from the taxpayer/corporation by any of the usual procedures, including that of taking a lien and forcing a sale after assessment, notice and demand. *Honey v. U.S.*, 760 F.Supp. 754 (W.D.Ark.1991).

■ The question before this court is whether Sanbar had sufficient unencumbered "cash" or "funds" at the time when Debtor took control of Sanbar, such that the Debtor violated the "willful" payover provision of § 6672. The IRS argues that Sanbar had sufficient funds in the operating account which reflected total deposits in the amount of $179,487.10 within the forty-five day period following the takeover by the Debtor, and $248,043.92 within sixty days.

However this approach of aggregating total deposits was expressly rejected in *Honey v. U.S.*, supra, 760 F.Supp. at 758–760. In *Honey*, the government argued that the court should simply add up the dollars deposited to or withdrawn from the corporate account in order to determine the level of unencumbered funds. In a lengthy and thorough analysis, District Court Judge Morris Sheppard Arnold rejected the government's approach. The government would profit significantly from such an approach, and would capture far more funds than if the government had used the ordinary procedures for attaching a tax lien.

In the case at bar, after Debtor took control of Sanbar, there was an average daily balance in the operating accounts of approximately $5,300; the Debtor contends that such funds never exceeded the minimum working capital needs of Sanbar. In fact, Sanbar's account statements reflect frequent negative balances. Further, the Debtor and IRS formulated a payment plan by which Sanbar was to pay off its delinquent obli-

gations. Despite the troubled financial condition of Sanbar, the IRS received payments of $1,000.00 per month for a substantial period of time during which the Debtor was in control of Sanbar.

■ The decision in *Slodov* does not specifically address whether the "working capital" of the taxpayer must be paid over to the IRS. However, it is clear that the Debtor had no obligation to liquidate the assets of Sanbar in order to pay the claim of the IRS. *Slodov,* 436 U.S. at 251, 98 S.Ct. at 1787. Further, the Supreme Court has specifically rejected the argument that a trust is impressed on after acquired funds. *Id.* at 251–253, 98 S.Ct. at 1787–88. Certainly, there are minimum working capital needs of a business to maintain operations and avoid liquidation of the business. Section 6672 should not be so construed as to discourage changes of ownership and management of financially troubled companies. *Id.* at 253–254, 98 S.Ct. at 1787–88. The Seventh Circuit Court of Appeals noted that "it might be a significant disincentive to entrepreneurs planning to take control of, and to finance, failing businesses to be faced with government trust fund claims for all funds attributable in some part to prior sales, no matter how remote." *Purdy Co. of Illinois v. U.S.,* 814 F.2d 1183, 1190 (7th Cir.1987). A "responsible person" is not a guarantor for payment of delinquent taxes simply by undertaking to continue operation of the business. *Slodov,* 436 U.S. at 253–254, 98 S.Ct. at 1787–88.

## III. CONCLUSION

Under the circumstances, this court finds that at the time the Debtor assumed control of Sanbar, there were insufficient unencumbered funds in which to pay the IRS above and beyond the payments which were actually made. This Court therefore concludes that Debtor was not in violation of I.R.C. § 6672, and the claim of the IRS is denied in its entirety.

This memorandum of decision contains this Court's findings of fact and conclusions of law. Debtor shall lodge and serve a pro-

posed order consistent with this memorandum of decision.