Donald R. FERGUSON,
Plaintiff/Counterclaim
Defendant,

v.

UNITED STATES of America,
Defendant/Counterclaim
Plaintiff,

v.

Richard Musal and Nicholas P. Miller,
Counterclaim Defendants.

No. 4:02–CV–40449.

United States District Court,
S.D. Iowa,
Central Division.

May 6, 2004.

Defendant/Counterclaim Plaintiff USA and the Defendant/Counterclaim Plaintiff USA's Motion for Summary Judgment against Richard Musal and Miller. Hearing was not held on the motions, and the matter is fully submitted for review.[1] For the reasons discussed below, Counterclaim Defendant Nicholas Miller's Motion for Summary Judgment is denied. Defendant/Counterclaim Plaintiff's Cross–Motion for Summary Judgment against Counterclaim Defendant Nicholas Miller is denied. Defendant/Counterclaim Plaintiff USA's Cross–Motion for Summary Judgment against Counterclaim Defendant Richard Musal is granted.

Harold N. Schneebeck, JR., Brown Winick Graves Gross Baskerville & Schoenebaum PLC, West Des Moines, IA, for Plaintiff.

Laquita Taylor Phillips, Teresa Dondlinger Trissell, U.S. Dept. of Justice Washington, DC, for Defendant.

William Sidney Smith, Ronald L. Mountsier, Jan M. Mohrfeld–Kramer, Smith Schneider Stiles Hudson Serangeli Mallaney & Shindler PC, Jerrold Wanek, Garten & Wanek, James R. Monroe, Des Moines, IA, Third–Party Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT BY MILLER AND THE UNITED STATES

GRITZNER, District Judge.

This matter is before the Court on Counterclaim Defendant Nicholas Miller's Motion for Summary Judgment against

### I. FACTS

Access Air, Inc. ("Access Air"), was a corporation that provided commercial passenger air transportation throughout areas of the continental United States. Access Air was a wholly owned subsidiary of Access Air Holdings, Inc. ("Holdings"). The operations of Access Air were essentially one and the same as Holdings, and the Board of Directors of Holdings[2] acted as the Board of Directors of Access Air.

Plaintiff/Counterclaim Defendant, Donald Roger Ferguson ("Ferguson"), was Chief Executive Officer of Holdings, President of Access Air, and a board member of Holdings. As of February 1999, Ferguson's job entailed having schedules ready and management in place to operate the airline. Frank Rosenberg served as an interim COO for about two to three weeks in April or May of 1999; when Rosenberg left, Ferguson resumed the position of CEO as well as COO of Access Air. At this time, Ferguson assumed responsibility of

---

1. Oral argument was only requested by Counterclaim Defendant Richard Musal. Under the circumstances, the Court finds no good cause or necessity for hearing. L.R. 7.1(c).

2. The members of the Board of Directors were: Donald Ferguson, John Ruan III, Fred Weitz, Tom Gibson, Gerry Shaheen, Jim Davis, Frank Rosenberg, Joe O'Brien, Richard Musal and an individual from Mid–American Energy.

passenger service, marketing, and fulfilling the operations of the airline. As CEO, he had all of the responsibility for operations, which included financing. Ferguson as CEO reported to the Board of Directors.

Counterclaim Defendant Richard Musal ("Musal") first began employment with Holdings in July 1996 when Ferguson hired him as Chief Financial Officer ("CFO"). Musal was the incorporator of Access Air and was appointed CFO of Access Air at its inception. Musal was on the Board of Directors of Access Air during his tenure with the airline and served as Treasurer of Holdings and Access Air. Musal also owned stock in Holdings. Musal, in his capacity as CFO, possessed the highest financial authority in the company and oversaw all the financial aspects of Access Air. Musal as CFO reported to Ferguson until August of 1999. Musal assumed the titles of President and COO of Access Air and Holdings some time in late July/early August of 1999,[3] and after August, Musal reported directly to the Board of Directors.

Counterclaim Defendant Nicholas P. Miller ("Miller") was hired by Musal as controller of Access Air.[4] Miller as controller was responsible for protecting the company assets, paying debts, and maintaining an accounting for assets and debts. Miller's duties entailed signatory power over Access Air's accounts, payment of accounts if funds were available, and supervisory power over the assistant controller, accountants, and payroll supervisor. Musal was Miller's boss with direct authority over Miller at all times during the period in question, and Miller reported directly to Musal.

Operations for Access Air commenced on February 3, 1999. From the very start of operations, Access Air was plagued with financial problems, and the corporation filed for bankruptcy protection on November 29, 1999.

This suit arises out of Access Air's failure to pay over to the IRS excise taxes that were collected on the sale of airline tickets. The Internal Revenue Code provides for a tax on amounts paid for the taxable transportation of persons by air. 26 U.S.C. § 4261. The customer purchasing the airline ticket is responsible for paying the tax, and the tax is generally included in the purchase price of the airline ticket. The tax is calculated based upon a percentage of the ticket's price, plus a flat rate per each domestic flight segment.[5] The taxes paid by the customer belong to the United States and "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501. If these funds are not remitted to the United States,

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully

---

3. Musal held these positions until February 29, 2000.

4. The Government claims that Miller was hired as the controller and eventually became the CFO. Miller denies that he was ever CFO. The record shows that at some point in 1999, Musal asked Miller if he would be willing to serve as CFO of Access Air. Miller indicated a willingness to assume the CFO position, however, he never became CFO because the appointment would have required the approval of the Board of Directors. Musal testified that Miller possibly signed some documents as CFO, but that he was never formally an officer or a director of the company.

5. The rates of tax applicable for 1999 are as follows:

| Domestic segments beginning | Rate of passenger tax | Per flight segment charge |
| --- | --- | --- |
| After 9/30/98 and before 10/1/99 | 8% | $2.00 |
| After 9/30/99 and before 2000 | 7.5% | $2.25 |

attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

Access Air's Department of Reservations and Accounting, located in Moline, Illinois, tracked the federal excise tax payments and receipts. Musal at all times had supervisory authority over this department. Although the Department of Reservations and Accounting was responsible for tracking the excise taxes, an outside individual in Texas was retained by Musal to prepare Access Air's excise tax returns. Access Air filed an excise tax return for the first quarter of 1999 and paid the delinquency shown on the return via check signed by Miller and dated August 30, 1999.[6]

In July of 1999, the second quarter return was prepared by the same individual from Texas that prepared the first quarter return. This return was reviewed by both Musal and Miller. Musal believed the second quarter return was incorrect; he did not believe the corporation owed as much as the figures on the return reflected. This second quarter return was never signed, the delinquency was not paid, and an amended return was never prepared.

The third quarter return was similarly not signed based on the same perceived inaccuracies, nor was the delinquency paid. Due to the financial problems Access Air encountered during its existence, Access Air filed for bankruptcy during the fourth quarter, and a fourth quarter return was never prepared.

The Internal Revenue Service assessed excise taxes in the amount of $1,404,404.09 in total for the second, third, and fourth quarter of 1999. The amount of unpaid excise tax was calculated by Revenue Agent Jerry Robertson from documents provided to him by Access Air.

Following an administrative review of the matter by the IRS Appeals Office located in Des Moines, the Commissioner of the IRS ("the Commissioner"), issued a notice of assessment on or about January 7, 2002, assessing a trust fund recovery penalty in the amount of $1,300,552.09 against Ferguson. In the January 7, 2002, notice of assessment, the Commissioner determined Ferguson to be responsible for the collection of air transportation excise taxes payable to Ferguson's former employer, Access Air, for the tax periods ending June 30, 1999, September 30, 1999, and December 31, 1999. The IRS also assessed a trust fund recovery penalty of $1,300,552.09 against Musal on January 7, 2002, and on February 18, 2002, a trust fund recovery penalty of $1,300,552.09 was assessed against Miller.

On or about February 13, 2002, Ferguson timely filed a Form 843 claim for refund for the tax periods ending June 30, 1999, September 30, 1999, and December 31, 1999. Each of Ferguson's claims for refund was for $20 for each relevant tax period, for a total of $60. The IRS denied Ferguson's claims for refund, and therefore the $60.00 he paid toward the trust fund recovery penalty assessed against him was not refunded.

On September 5, 2002, Ferguson filed a Complaint in United States District Court stating that he has overpaid the trust fund recovery penalty for the second, third, and

---

**6.** The taxes can be paid on a quarterly basis. The first quarter runs from January 1, 1999, through March 31, 1999; the second quarter begins on April 1, 1999, and runs through June 30, 1999. The third quarter runs from July 1, 1999, through September 30, 1999; the fourth quarter runs from October 1, 1999, through December 31, 1999.

fourth quarter 1999 tax periods, and requesting judgment in his favor on his claim for relief against Defendant in the amount of $60.00, together with interest thereon, his costs of this action, and other such relief as the Court may deem appropriate, including the award of attorney's fees under 26 U.S.C. § 7430.

Defendant states that as a result of the actions of Ferguson, Musal, and Miller, a delegate of the Secretary of the Treasury assessed a trust fund recovery penalty in the amount of $1,300,552.09 against Ferguson, Musal, and Miller in accordance with 26 U.S.C. § 6672. Defendant has brought a counterclaim seeking to reduce to judgment the trust fund recovery penalties assessed against each of them, asserting that they were each a person required to collect, truthfully account for, and pay over to the United States the unpaid federal excise taxes imposed under 26 U.S.C. § 4261 on the amounts paid to Access Air for air transportation, and that each willfully failed to collect or truthfully account for and pay over the excise taxes.

Defendant further asserts that despite notices and demands, Ferguson, Musal and Miller have each neglected, failed, and refused to pay the assessed amounts. Defendant states that each remains indebted to the United States for the unpaid balance of $1,300,552.90 plus statutory interest accruing from the dates of the assessments. Defendant requests the Court to deny Ferguson the relief requested in his Complaint and enter judgment in favor of Defendant against Ferguson, Musal, and Miller for the unpaid balances of the assessments and award Defendant costs and other such relief as the Court deems proper.

## II. STANDARD OF REVIEW

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema,* 534

U.S. 506, 122 S.Ct. 992, 998–999, 152 L.Ed.2d 1 (2002). Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herring v. Canada Life Assurance Co.,* 207 F.3d 1026, 1029 (8th Cir.2000).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548)); *see also Shelter Ins. Co. v. Hildreth,* 255 F.3d 921, 924 (8th Cir.2001); *McGee v. Broz,* 251 F.3d 750, 752 (8th Cir.2001). Once the moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.,* 165 F.3d 602, 607 (8th Cir.1999). The Court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. *de Llano v. Berglund,* 282 F.3d 1031, 1034 (8th Cir.2002); *Pace v. City of Des Moines,* 201 F.3d 1050, 1052 (8th Cir.2000); *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir.1997).

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates

that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Shelton v. ContiGroup Companies, Inc.,* 285 F.3d 640, 642 (8th Cir.2002) (citing *Henerey v. City of St. Charles,* 200 F.3d 1128, 1131 (8th Cir.1999)). Summary judgment should not be granted if the Court can conclude that a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991).

## III. APPLICABLE LAW AND DISCUSSION

Arising from the need to protect tax funds held in trust by private business entities, the law imposes stern responsibility upon corporate officers who use the trust funds as available capital for other business needs.

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). "The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671.

 "[A]n individual is liable under § 6672 if he (1) is a "responsible person" who (2) "willfully" fails to pay over the taxes in question." *Jenson v. United States,* 23 F.3d 1393, 1394 (8th Cir.1994) (citing *Honey v. United States,* 963 F.2d 1083, 1086 (8th Cir.), *cert. denied,* 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992)). "A corporate officer is responsible if he has significant, albeit not necessarily exclusive, authority in the field of corporate decision making and action where taxes due the federal government are concerned." *Id.* (quoting *Hartman v. United States,* 538 F.2d 1336, 1340 (8th Cir.1976)) (quotations omitted). The corporate officer does not need to be an actual disbursing officer. *Id.*

 "A responsible person acts willfully within the meaning of § 6672 whenever he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes." *Olsen v. United States,* 952 F.2d 236, 240 (8th Cir.1991) (quoting *Hartman,* 538 F.2d at 1341) (quotations omitted). "A responsible person also acts willfully by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Id.* (quoting *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987)) (quotations omitted). "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." *Elmore v. United States,* 843 F.2d 1128, 1132 (8th Cir.1988).

### A. Counterclaim Defendant Miller's Motion for Summary Judgment

#### 1. "Responsible Person"

 Miller asserts that as controller for Access Air, he was not a responsible person for the collection or truthful accounting and paying over of federal excise taxes within the meaning of 26 U.S.C. § 6672.

In addition to maintaining he was not responsible for the collection, accounting, or payment of the taxes, Miller contends that his authority to pay creditors was restricted by the Board of Directors and by his supervisor, claiming that he had no authority to pay creditors outside of the directive to pay only those creditors which were necessary to maintain the operation of the airline and to "keep the planes flying."

Miller contends that the reservations center in Moline was charged with the duty of collecting and accounting for the taxes collected as part of the revenue accounting and reservations systems and that he lacked any authority over this department. Miller states that his duties were protecting assets of the company, accounting for assets and debts, and informing the CFO (Musal) of that information. Miller also claims that he lacked authority to write checks for the remaining three quarters of 1999 absent Board authority.

The Government asserts that prior to and during the tax periods at issue, Miller had significant decision-making authority regarding Access Air's federal tax matters, noting that during the tax periods at issue, Miller signed Access Air's bank checks made payable to an account from which Access Air's employees' payroll taxes were paid. The Government also notes that Musal stated Miller had the authority to pay Access Air's excise taxes for the first through the third quarters of 1999, and that Miller signed checks and managed cash flow. The Government claims that Miller's signing, during the third quarter of 1999, the check for Access Air's excise taxes due for the first quarter, without having to seek approval, shows that he had the authority to pay Access Air's excise taxes during the second through fourth quarters.

█ "Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Miller v. United States,* 1991 WL 53259, at *3 (S.D.Iowa March 7, 1991) (quoting *Thomsen v. United States,* 887 F.2d 12, 16 (1st Cir.1989)); *see also Thosteson v. United States,* 331 F.3d 1294, 1299 (11th Cir. 2003) (recognizing same factors and finding responsible person where Thosteson helped incorporate the company, served as vice-president and president, owned varying levels of stock in the company, and possessed the authority to hire and fire employees); *Denbo v. United States,* 988 F.2d 1029, 1032 (10th Cir.1993) (recognizing same indicia of responsibility and finding responsible person where Denbo made arrangements for several bank loans, made personal loans to the corporation, held regular meetings with president of the company and the accountants, and had authority to sign checks from the company's inception).

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive.

*Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1455 (5th Cir.1993) (finding responsible party where Barnett owned twenty percent of the company's stock, served as a director during each of the quarters for which taxes were not paid, served as vice president until he took over as president, was responsible for the day-to-day operations of the company, had authority to hire and fire employees, purchased supplies with company funds, made recommendations regarding which credi-

tors to pay, and had check signing authority); *see also Jenson*, 23 F.3d at 1395 (responsible person where "Jenson was the founder and president of the corporation. His family owned all of the company's stock, and he served on the board of directors throughout the corporation's existence. He retained the exclusive right to borrow on behalf of the corporation, and he had authority to fire all employees.")

Miller was the controller of the company within the accounting department and was supervised by Musal. The record shows that in his capacity as controller, Miller applied for credit on behalf of Access Air, paid funds for irrevocable letters of credit, and signed promissory notes that were binding upon Access Air. During the period in question, Miller authorized funds totaling $5,562,286.42 to be transferred from Access Air's bank account to its creditors. Miller was a signatory on Access Air's financial accounts, and he had the ability to sign checks and to borrow money on behalf of the corporation. Miller testified that many times when the financial situation was tight, he made decisions on his own regarding what bills would be paid. Miller also indicated that he had authority to hire employees within his department. Miller also took measures to attempt to alleviate the tax problem, setting up a trust fund account specifically for the excise taxes in June or July of 1999. Instead of being applied towards the unpaid excise taxes, however, these funds were used to pay off other creditors of Access Air.

The record also reveals that Miller was not a shareholder of the corporation. He never sat on the Board of Directors and was never an officer of the corporation. Although Musal stated that if the cash had been there, Miller would have had the authority to pay the excise taxes without having to consult with Musal first, Musal's credibility on the subject is suspect, given that Section 6672 imposes joint and several liability. Miller was not in charge of the Department of Reservations and Accounting, which was responsible for tracking the excise taxes; that department reported directly to Musal. Finally, although Miller handled day-to-day financial matters, he was not involved in overall day-to-day operations of the corporation.

Several indicia of responsibility weighing both for and against finding Miller a "responsible person" are present, and no single factor is dispositive. Where conflicting evidence is presented, a genuine issue of material fact exists, and the Court cannot conclude as a matter of law that Miller was a "responsible person". *See King v. United States*, 914 F.Supp. 335, 339 (W.D.Mo. 1995) (district court not finding as a matter of law that Stuart King was a "responsible person", observing that he did not have significant control over the disbursement of the corporation's assets, and that of the six facts listed by the Fifth Circuit in *Barnett* as indications showing a "responsible person", he only possessed two: the authority to sign checks and at least some decision-making control over the payment of creditors. "Although Stuart King may have made the calculation as to the amount of withholding taxes which were owed, the United States has not shown that he had any authority to make payment to it absent some direct authority from Hale King. These facts are simply insufficient to warrant summary judgment for the United States on this issue."); *Coonrod v. United States*, 1995 WL 263553, at *1–2 (E.D. Mo.1995 Jan. 26, 1995) (district court denied both parties' motions for summary judgment, stating the "briefs on summary judgment make it clear that there are factual issues which must be decided by the fact finder." The government contended that the plaintiff was the responsible person for withholding during the relevant tax periods; plaintiff, who was hired as controller and eventually named vice-president of finance, argued that he was

not the responsible person, but that the president and COO had the sole authority to make decisions about which creditors to pay.); *Price v. United States,* 1992 WL 455527, at *4–5 (D.Minn. Nov. 12, 1992) (Secretary claimed she had only minor check-signing authority and was never involved in tax or wage payments. The government produced evidence of some of the checks she signed on behalf of the company, payable to various creditors, and deposition testimony which suggested that as secretary she did exercise significant control over the company's financial matters. The district court concluded that due to the contradictory evidence presented, a genuine issue of material fact existed and summary judgment was not appropriate.).

The record demonstrates that a genuine issue of material fact exists regarding whether Miller had the requisite authority in the area of corporate decision making and action where taxes due to the federal government were concerned. The Court cannot determine as a matter of law that Miller was a "responsible person" under the statute.

### 2. "Willfully failed to pay"

■■■ Assuming for the sake of argument that Miller was a responsible person for purposes of 26 U.S.C. § 6672, his liability would still hinge on whether he willfully failed to pay over the taxes in question. "The responsible person has the burden to show that he did not willfully fail to pay over the federal employment taxes." *Olsen,* 952 F.2d at 239.

"A responsible person acts willfully within the meaning of § 6672 whenever he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes." *Olsen,* 952 F.2d at 240 (quot-

ing *Hartman,* 538 F.2d at 1341) (quotations omitted). "A responsible person also acts willfully by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Id.* (quoting *Wood,* 808 F.2d at 415) (quotations omitted). "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." *Elmore,* 843 F.2d at 1132.

■■■ Once a person is found responsible, knowledge that taxes are unpaid is relevant to the issue of willfulness. *Barton v. United States,* 988 F.2d 58, 60 (8th Cir.1993). Miller by his own admission was aware that the excise taxes for the second, third, and fourth quarters had not been paid.

■■■ Despite being aware that Access Air was responsible for remitting collected excise taxes to the IRS, upon receiving what he deemed an inaccurate return, Miller did not take any steps to have another return prepared for the second quarter or to look into the perceived inaccuracies in the second quarter return any further. The record clearly shows that Miller paid other creditors, in spite of his knowledge that the excise taxes were not being paid over to the IRS. "Evidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over [taxes] is proof of willfulness as a matter of law." *Olsen,* 952 F.2d at 240; *see also Jenson,* 23 F.3d at 1395 (after learning of the corporation's tax liability, Jenson voluntarily and consciously chose to pay certain creditors before settling with the IRS; this was sufficient to establish willfulness as a matter of law).

■ Miller argues that his authority to pay the excise taxes was limited by a directive from his superiors that he pay only those creditors that were necessary to keeping the planes in the air. Following orders is insufficient to render a failure to pay involuntary. *See United States v. Rem*, 38 F.3d 634, 645 (2nd Cir.1994) (defendant's actions willful as a matter of law where defendant knew that the required withholding taxes were not being paid, defendant recommended that they be paid, but the controlling shareholder vetoed his suggestion and insisted that current creditors be paid instead); *Brounstein v. United States*, 979 F.2d 952, 955 (3rd Cir.1992) ("Instructions from a superior not to pay taxes do not, however, take a person otherwise responsible under section 6672(a) out of that category."); *Gephart v. United States*, 818 F.2d 469, 475 (6th Cir.1987) (noting that "it is generally held that one who is a responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril."); *Roth v. United States*, 779 F.2d 1567, 1572 (11th Cir.1986) (no instruction by superiors could effectively bar an otherwise "responsible person" from paying over funds in accordance with the law); *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983) ("The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment."). In addition, there is no evidence that Miller was specifically directed **not** to pay the excise taxes; he was directed that creditors who kept the planes flying and payroll were the top priority.

■ Miller asks the Court to recognize the reasonable cause defense to willfulness which, Miller correctly points out, has not been accepted within the Eighth Circuit. *See Keller v. United States*, 46 F.3d 851, 855 (8th Cir.1995) ("Such attempts at establishing reasonable cause to excuse the failure to pay over withholding taxes do not negate a finding of willfulness."); *Olsen*, 952 F.2d at 241 ("This court has held that reasonable cause is no part of the definition of willfulness.") (citing *United States v. Strebler*, 313 F.2d 402, 403 n. 2 (8th Cir.1963)). Eighth Circuit law is controlling on this Court, and given the prior decisions on this issue, the Court cannot recognize Miller's reasonable cause defense.

Finally, in reference to the 1999 fourth quarter withholding taxes, Miller claims that in addition to the above listed limitations he asserts existed on his authority and responsibility, Access Air filed for bankruptcy, after which the Bankruptcy Court supervised payments to creditors and operations of the business, which further limited Miller's ability to make any creditor payment decisions with respect to Access Air.

■ "The liability for payment of taxes collected arises upon the collection of those taxes and not the date when the statute requires that they be paid over to the government." *Olsen*, 952 F.2d at 238 (citing *Long v. Bacon*, 239 F.Supp. 911, 912 (S.D.Iowa 1965)). Here, the tax was collected from the customer at the time the ticket was purchased. The tax therefore was collected prior to the bankruptcy filing, and the liability for the payment of these excise taxes arose prior to the filing of the bankruptcy. Tax funds held in trust were being used for other purposes prior to the bankruptcy filing. The filing of the bankruptcy on November 29, 1999, is not dispositive in determining whether Miller willfully failed to pay the excise taxes. *Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir.1987) ("It is also irrelevant that the corporation declared bankruptcy before the taxes were actually due for either quarter."). "When an employer is a corporation, withheld taxes may be lost to

the Government in the event of contingencies such as bankruptcy." *Emshwiller v. United States,* 1976 WL 1179, at *1 (D.Neb. Nov. 9, 1976), *aff'd with unrelated exceptions,* 565 F.2d 1042 (8th Cir.1977). "[Section] 6672 provides that, if the Government is unable to collect trust fund taxes from a corporate taxpayer, the Government has an alternative source for this revenue." *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 550, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *see also Emshwiller,* 1976 WL 1179, at *1 ("In order to assure an additional source for such revenue, 26 U.S.C. § 6672 enables the Commissioner of Internal Revenue to proceed directly against the individual who was responsible for collecting and paying over the [taxes] but who willfully failed to do so.").

The record demonstrates that if Miller is ultimately found to be a responsible person, he acted willfully. Miller's actions and inactions were conscious and voluntary, and with the knowledge that the trust funds owed to the IRS were not being paid over, but instead being used for other purposes. Miller's Motion for Summary Judgment must be denied.

### B. Defendant/ Counterclaim Plaintiff USA's Cross–Motion for Summary Judgment

On October 24, 2003, Defendant filed a Cross–Motion for Summary Judgment against Miller and Musal, requesting that the Court find, as a matter of law, that Miller and Musal were each liable persons under 26 U.S.C. § 6672.

### MILLER

With respect to Miller, the Government herein asserts the same arguments it put forth in resistance to Miller's Motion for Summary Judgment. In his resistance to the Government's motion, Miller reiterates the arguments he offered in support of his motion for summary judgment. As noted above, a genuine issue of material fact exists regarding whether or not Miller was a responsible party and viewing the facts in the light most favorable to Miller, the Court concludes that a reasonable trier of fact could return a verdict in his favor. For the reasons stated above in respect to Miller's Motion for Summary Judgment, Defendant/Counterclaim Plaintiff's Cross–Motion for Summary Judgment, with respect to Counterclaim Defendant Miller, must be denied.

### MUSAL

#### 1. "Responsible Person"

■ Musal also claims that his authority to pay the excise taxes was limited by a directive from his superiors, namely the Board, that he pay only those creditors that were necessary to keeping the planes in the air, asserting that he lacked the authority to effectively shut down the airline's operations by paying the excise taxes in lieu of operating expenses such as fuel, maintenance, and payroll. However, in his deposition testimony, Musal stated that he *did* have the authority to pay the excise taxes, there just wasn't enough money available to pay them. Essentially, there was not enough money to pay both the excise taxes and the other creditors, and if Musal had made the decision to pay the taxes instead of paying the other creditors, it effectively would have shut down the airline. Musal himself has acknowledged that it was not the authority to pay taxes that he lacked; funds to pay the taxes were simply not available in light of Access Air's priority of keeping the planes in the air without using the funds collected from airline passengers and held in trust for the Government.

The Government asserts that prior to and during the second, third, and fourth quarters of 1999, Musal was the CFO of Access Air, and that during the third and fourth quarters of 1999, he was also Access

Air's COO and President. The Government asserts that during the third and fourth quarters of 1999, Musal managed the day-to-day operations of Access Air, and that from the beginning to the end of Access Air's operation, Musal had significant decision-making authority regarding Access Air's financial matters and possessed significant taxpaying authority.

■■■■ Musal claims that as Chairman of the Board, Ferguson was advised of the excise taxes due, and that Ferguson had the authority and ability to direct that the trust fund taxes be paid. Even assuming, in the light most favorable to Musal, that Ferguson *did* possess the authority to direct that the taxes be paid, this is not dispositive in making a determination on whether *Musal* was a responsible person. "[T]wo or more persons may be jointly and severally liable under [Section] 6672". *Hartman,* 538 F.2d at 1340; *see also El-more,* 843 F.2d at 1134.

Musal prepared the financial information for Access Air's bankruptcy and signed the bankruptcy filings in his capacity as President of Access Air and as the debtor. Musal had the authority to sign Access Air's bank checks, and that authority was exercised on numerous occasions; his stamped signature was on Access Air's payroll checks; he borrowed money on behalf of Access Air; he decided along with Miller what debts of Access Air were to be paid; and he negotiated with Access Air's creditors regarding payment of Access Air's past due debts.

The Board of Directors never explicitly told Musal not to pay the excise taxes. In fact, the record tends to show that the full Board was not even aware that the excise taxes were not being paid until October of 1999.[7] Upon learning of the tax delinquency, the Board directed management to "not let the tax matter get any worse and

to immediately develop a plan to clear up the arrearages." Musal stated that by "management", the Board was referring to him and Miller, and that he and Miller were charged with the task of coming up with a plan to resolve the tax problem.

■■■■ During his deposition, Musal indicated that only he and Miller had the day-to-day involvement with Access Air's tax matters. He further indicated that he could have gone to Miller, instructed him to pay the excise taxes, and he would not have needed to go to the Board or Ferguson for approval. "To trigger § 6672 liability, a person must have significant decision-making authority over the corporation's tax matters." *Barton,* 988 F.2d at 59. Musal stated that had the funds been available and not needed for the operation of the airlines, he could have paid the excise taxes.

This background suggests the conclusion is inescapable that Musal was a "responsible person" under the statute, but Musal argues that the *Barton, Sharp,* and *Bisbee* cases dictate a ruling in his favor. In *Barton,* the IRS assessed a trust fund penalty against Barton for unpaid corporate withholding taxes because he "was the corporation's second-in-command, [he] had the corporate authority to sign tax returns and checks for small purchases, a rubber stamp facsimile of [his] signature appeared on payroll checks, and Barton knew the corporation had not met earlier tax obligations." *Barton,* 988 F.2d at 60. After a bench trial, the district court found Barton was not a responsible party but denied Barton's motion for attorney's fees on the basis that the government's litigation position that Barton was a responsible person was substantially justified. *Id.* at 59. The Eighth Circuit found that the government's litigation position was *not* reason-

**7.** Musal testified that the Board was notified of the tax delinquency in October of 1999.

able in light of clear evidence showing that Barton did not have tax paying authority. *Id.* at 60–61. "All the witnesses testified Barton lacked tax-paying authority. [The corporations' president] testified he alone controlled the corporation's financial affairs, he authorized every check Barton signed, and he was the person responsible for the collection and paying over of the tax funds in question." *Id.* at 60. Unlike *Barton,* there is no clear evidence in this case showing Musal lacked tax-paying authority; to the contrary, Musal himself testified he could have paid the taxes without prior approval had the funds been available. Musal had what Barton lacked.

In *Sharp,* the IRS assessed a penalty against that plaintiff, asserting that as vice president of finance and supervisor of the accounting department, Sharp had sufficient authority over the disbursement of corporate funds to be held accountable for the unpaid taxes. *Sharp v. United States,* 1997 WL 717829, at *1 (S.D.Iowa 1997). A jury found for Sharp, and she subsequently filed a motion for attorney's fees. *Id.* The district court denied the motion, finding that the government's litigation position was substantially justified. *Id.* at *2. The Eighth Circuit reversed on the issue of attorney's fees. *Sharp v. United States,* 145 F.3d 994, 995 (8th Cir.1998). In finding that Sharp clearly did not have authority to pay the withholding taxes, the court observed that the president of the corporation had specifically directed Sharp not to pay the IRS the withholding taxes. *Id.* at 996. The court noted that the IRS was aware of the limitations on Sharp's authority before it filed its counterclaim against her, and therefore its litigation position was not substantially justified. *Id.* This record lacks evidence demonstrating that Musal was *specifically directed* not to pay the excise taxes.

In *Bisbee,* the IRS assessed a penalty for failure to pay withholding taxes against Green, the treasurer of the company. *United States v. Bisbee,* 245 F.3d 1001, 1004 (8th Cir.2001). A jury found that Green was not a responsible party; Green's subsequent motion for attorney's fees was denied. *Id.* at 1007. Green had worked for the corporation for 21 years and had previously served as CFO, treasurer, president, and CEO. *Id.* at 1004. Bisbee took over Green's former offices of president and CEO in 1992, and during the tax period at issue, Green was only the treasurer. *Id.* The Eighth Circuit reversed the district court and determined that the government's litigation position against Green was not reasonable. *Id.* at 1007. "Other than Green's title at [the corporation], the only indication that Green had authority to pay taxes in contravention of Bisbee's directions to the contrary came from Bisbee himself, whose credibility on the subject is suspect at best." *Id.* at 1008. In the present case, there is substantially more than Musal's title to indicate that Musal had authority to pay the excise taxes.

Musal held corporate office, possessed control over the financial affairs of Access Air, possessed the authority to disburse corporate funds, had stock ownership in Holdings, and had the ability to hire and fire employees. In addition, Musal admitted that he possessed the ability to pay the excise taxes without needing to seek Board approval. These facts are in the record and can not be disputed. They demonstrate that Musal was a "responsible person". His own admission that he could have paid the taxes had the funds been available is telling.[8] The relevant issue is

---

8. *See Jenson,* 23 F.3d at 1395 (in holding that no genuine dispute existed with regard to Jenson's responsibility for the corporation's taxes, the court noted that Jenson had admitted he possessed responsibility in his deposition).

whether Musal possessed authority to pay the taxes, not whether the funds were available to pay them. Clearly the funds were available—they were being collected from passengers upon the sale of airline tickets and under 26 U.S.C. § 7501, were to be held in trust for the Government. "[T]he funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors." *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). The decision to use these funds to pay other creditors, instead of turning them over to the Government, seems precisely the type of corporate decision making Section 6672 was designed to deter.

■ Musal attempts to place blame on the Board and their directive that bills which would keep the planes in the air were to be paid before other creditors; however, there is no indication that the Board gave this directive with the knowledge that to do so would mean the excise taxes would not be paid, or that funds that were to be held in trust for the United States were being used to pay other creditors. There is also no evidence in the record that the Board specifically directed Musal **not** to pay the excise taxes.

Although Musal was on the Board of Directors, it does not appear that he informed the full Board of the delinquent excise tax situation until October of 1999. Upon being informed of the problem, the Board clearly indicated that management should not let the tax situation get any worse. Even assuming Musal could prove that the Board **was** aware of the tax situation prior to October of 1999, and that the Board gave its directive with full knowledge of the tax situation, or that he was specifically ordered by the Board **not** to pay the excise taxes, a directive from a superior not to pay the taxes is insufficient to remove Musal from the ambit of Section 6672 liability. *See Brounstein*, 979 F.2d at 955 ("Instructions from a superior not to pay taxes do not, however, take a person otherwise responsible under section 6672(a) out of that category."); *Gephart*, 818 F.2d at 475 (noting that "it is generally held that one who is a responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril."); *Roth*, 779 F.2d at 1572 (no instruction by superiors could effectively bar an otherwise "responsible person" from paying over funds in accordance with the law); *Howard*, 711 F.2d at 734 ("The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment.").

■ All of the facts offered to support a finding that Musal was a "responsible person" are beyond doubt. Whether or not the money was available to pay the taxes is irrelevant. In the majority of Section 6672 cases, the corporations experienced financial difficulties and unlawfully used taxes collected to pay other creditors, thus the need for Section 6672 liability. The issue in determining "responsible person" status is who possessed decision-making authority. "The test for determining whether a person has the requisite control over a company's financial affairs to be considered "a responsible person" includes such factors as membership on the board of directors, holding a position of a corporate officer, ownership of stock in the corporation, the authority to write checks on corporate accounts, and the authority to hire and fire personnel." *Price*, 1992 WL 455527, at *3 (citing *Kelly v. Lethert*, 362 F.2d 629, 634 (8th Cir.1966)). Given Musal's position in the corporation, specifically that he was either CFO, COO, or President during the relevant time period, his authority with respect to day-to-day busi-

ness functions, and especially his own admission that he possessed the authority to pay the excise taxes, the record, considered in a light most favorable to Musal, convinces this Court that Musal had significant decision-making authority over Access Air's tax matters and was a responsible person under 26 U.S.C. § 6672.

### 2. "Willfully failed to pay"

Having determined that Musal was a responsible person for purposes of 26 U.S.C. § 6672, the Court must next consider whether he willfully failed to pay over the taxes in question. A party found to be a "responsible person" has the burden to show that he did not willfully fail to pay over the taxes owed. *Olsen,* 952 F.2d at 239.

Musal states that Access Air filed for bankruptcy before the date the excise tax returns for the third and fourth quarters of 1999 were due, and that after the filing of the bankruptcy, no pre-petition debts could be paid without the approval of the Bankruptcy Court. Musal argues that his failure to pay those taxes, therefore, cannot be deemed to be willful. For the same reasons discussed above, see III.A.2 supra, this argument fails.

Musal also urges the Court to examine his subjective intent in determining whether his actions were willful, claiming that his subjective belief that once the bankruptcy was filed, payment of the fourth quarter taxes was out of his control makes it clear that he could not have been willful with respect to those taxes. A mistaken belief is no defense to Section 6672 liability. *See Hochstein v. United States,* 900 F.2d 543, 549 (2nd Cir.1990), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992) ("Hochstein's good faith belief that New York law required him to prefer Safelon's employees over the federal government is not a defense to liability under section 6672."); *Thomsen,*

887 F.2d at 17–18 (a plaintiff may be found willful "even though the payments to the other creditors may have been made in good faith or even in the mistaken belief that the payments were required to be made in preference to payments to the government"); *Teel v. United States,* 529 F.2d 903, 906 (9th Cir.1976) ("A mistaken belief on the part of the responsible person that the tax need not or cannot be paid over does not suffice to render the failure to pay nonwillful."). To the extent Musal is claiming that his subjective intent is a reasonable cause to excuse the failure to pay the excise taxes, as previously noted, the Eighth Circuit has held that reasonable cause is no part of the definition of willfulness. *See Keller,* 46 F.3d at 855; *Olsen,* 952 F.2d at 241; *Strebler,* 313 F.2d at 403 n. 2.

The Government contends that Musal's knowledge of payments to Access Air's creditors and his own acceptance of compensation from Access Air after he knew that Access Air's second quarter excise taxes were unpaid constitutes willfulness as a matter of law. The Government further asserts that despite knowing that the excise taxes were not being paid, Musal failed to ensure that deposits were made or funds set aside for Access Air's excise taxes for those quarters and continued to permit payments to be made to Access Air's creditors, employees, and himself. Defendant asserts that through these actions, Musal acted with a reckless disregard of a known or obvious risk that, just as with the second quarter excise taxes, Access Air's excise taxes for the third and fourth quarters of 1999 may not get paid.

The record shows that Musal was privy to Access Air's financial condition, that he held continuous discussions with Miller involving Access Air's past due debts, and that he was aware of the information in all of Access Air's monthly financial state-

ments in 1999, including the information contained in the balance sheets. Musal knew that the excise taxes were being collected by the reservations department. Musal admitted that he was aware Access Air was responsible for remitting collected excise taxes to the IRS and that he knew the excise taxes for the second, third, and fourth quarters were not being turned over to the IRS. In spite of this knowledge, Musal proceeded to direct Miller to pay other creditors, and he therefore was aware that funds which were to be held in trust for the Government were being used to pay other creditors. "Evidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law." *Olsen*, 952 F.2d at 240; *see also Jenson*, 23 F.3d at 1395 (after learning of the corporation's tax liability, Jenson voluntarily and consciously chose to pay certain creditors before settling with the IRS; this was sufficient to establish willfulness as a matter of law).

Although Musal claims that his authority to pay the excise taxes was limited by the directive from the Board that he pay only those creditors that were necessary to keeping the planes in the air, there is no evidence that Musal was ever specifically directed by the Board or by Ferguson to not pay the excise taxes. In any event, as noted above, following the orders of superiors is insufficient to render a failure to pay involuntary. Even viewing the facts in the light most favorable to the nonmoving party, the record demonstrates that Musal's actions and inactions were conscious and voluntary, and with the knowledge that the trust funds owed to the IRS were not being paid over, but instead being used for other purposes.

The record shows that Musal is a responsible person who acted willfully, as

required by 26 U.S.C. § 6672. The Government's Motion for Summary Judgment against Counterclaim Defendant Richard Musal must granted.

### 3. Accuracy of the Assessment

Musal contends that summary judgment is inappropriate because Defendant has not established the correct amount of the assessment against him, claiming that the assessment was inaccurately and erroneously computed. Musal asserts that the IRS assessment is clearly erroneous on its face, noting that the segment tax liability for the months of October and November 1999 are in the amounts of $41,050.80 and $43,103.34, respectively. Musal claims that because the segment tax for those months was computed as a flat $2.25 for each flight segment, it is impossible for the segment tax for those months to be in the exact amount as assessed. Musal also claims that there is evidence that at the time of the bankruptcy filing, a credit card company held between one and two million dollars of ticket revenue that had not been paid to Access Air, and that those funds would have included approximately $100,000—$200,000 of excise taxes. Musal asserts that he cannot be said to have willfully failed to pay taxes which were never actually collected by Access Air.

Musal further claims that there is evidence that during all of 1999, but particularly during the months of June and July of 1999, millions of dollars were spent by Access Air to purchase tickets on other airlines on behalf of stranded Access Air passengers. Musal claims that there is evidence that, at least with respect to tickets purchased on United Airlines, excise tax was paid to United, and that Defendant made no attempt to factor those tax payments into its computation of Access Air's tax liability. Musal asserts that the

amounts paid by Access Air to provide its passengers with air transportation on other airlines should be treated as passenger refunds, thereby eliminating any excise tax liability due from Access Air.

Musal, in his capacity as President of Access Air, completed the bankruptcy forms and swore under the penalty of perjury that the information included in the bankruptcy filing was true and correct to the best of his knowledge, information, and belief. In those filings, the IRS is listed as a creditor holding an unsecured priority claim in the amount of $1,724,630 for excise taxes and $390,850 in segment fees, amounts when added together are well in excess of the amount assessed against Musal by the IRS.

 Musal does not claim to know the correct amount of Access Air's total excise tax liability for any of the quarters at issue. "[A]n assessment is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002); *see also North Dakota State Univ. v. United States*, 255 F.3d 599, 603 (8th Cir.2001) ("Tax assessments made by the IRS are presumed correct and the taxpayer bears the burden of proving, by a preponderance of the evidence, that the assessment is erroneous."); *In re Harker*, 357 F.3d 846, 848 (8th Cir.2004) (quoting same). The IRS possesses the power to decide how to make a tax assessment, "as long as the method used to make the estimate is a "reasonable" one." *Fior D'Italia, Inc.*, 536 U.S. at 243, 122 S.Ct. 2117. Because Access Air did not file returns for the second, third, and fourth quarters, the IRS had to rely on the records maintained by Access Air in calculating the excise taxes owing for those quarters. "The Commissioner's assessment is expected to be rational, not flawless." *Caulfield v. Commissioner of Internal Revenue*, 33 F.3d 991, 993 (8th Cir.1994)

(quoting *Dodge v. Comm'r*, 981 F.2d 350, 353 (8th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993)) (quotations omitted). The Court cannot conclude that relying on Access Air's own records was an unreasonable method for determining the corporations tax debt or that Musal has carried his burden of proving that the assessment against him was erroneous.

## IV. CONCLUSION

Counterclaim Defendant Nicholas Miller's Motion for Summary Judgment (Clerk's No. 42) is **denied**. Defendant/Counterclaim Plaintiff USA's Cross-Motion for Summary Judgment (Clerk's No. 51) against Counterclaim Defendant Nicholas Miller is **denied**, but against Counterclaim Defendant Richard Musal is **granted**.

The Clerk of Court is directed to enter judgment against Counterclaim Defendant Richard Musal and in favor of the United States for the unpaid assessment and any additional accruals, jointly and severally with any additional parties ultimately determined to be responsible parties in this action, and costs.

**IT IS SO ORDERED.**